(Decided 27th March, 1889.)

---

ROBERT G. H. PENNINGTON, and others *vs.* EMILY H. PENNINGTON, and WILLIAM C. PENNINGTON.

*Declaratory Decrees—Act of* 1888, *ch.* 478—*Construction of Will—Alternative or Substitutional devise— Contingent remainder and Vested Executory Devise — Fee simple Estates—Estates Tail male—Estates Tail female—Fee-tail general—Lapsed devise—Definite and Indefinite failure of Issue—Perpetuities.*

The jurisdiction conferred by the Act of 1888, ch. 478, (Code, Art. 16, sub-title "Declaratory Decree") should never be invoked for the purpose of having determined mere moot-points, or mere abstract or experimental questions. In all cases the Court should see that there is a real *bona fide* question for controversy involved, as between the parties to the cause, and that there is an existing propriety for its immediate decision.

Pennington, *et al. vs.* Pennington.

It is only in those cases where equity would have jurisdiction, if some specific or ultimate relief were asked, that the Court would be warranted in proceeding under the statute to make a declaratory decree; and the plaintiff must be unable to seek other relief than a mere declaration of title.

A testator, by his will, dated 2nd of August, 1834, gave real estate to his wife for life, and (omitting certain contingent dispositions which failed) devised the reversion to his daughter H. "for her life, with reversion to her eldest son in fee; and if she die without male issue, then to my daughter C, for life, with remainder to her eldest son in fee; and if she also die without issue, then to my next daughter, and so on, in the same manner." The testator died in 1837, leaving a widow who died in 1867. His daughter H. died before him unmarried, and his daughter C. survived him and died in infancy unmarried. A third daughter E. survived him and married, and had a son R. G. H. and other children. On a bill filed by E. and her husband against R. G. H. and others, for a declaratory decree construing said will, it was HELD:

1st. That the limitations to the daughters of the testator and their eldest sons in succession, were not to be regarded as limitations upon the preceding contingent estates, and only to take effect after them, but as alternatives substituted for the former, and to take effect only in case they should fail and never take effect at all.

2nd. That H. having predeceased the testator, without ever having had male issue, the limitations both to her and to her eldest son totally failed of effect as if they never had place in the will.

3rd. That the limitation over to C. was good and effectual, she having survived the testator, though she died without a son.

4th. That the devise over upon the failure of male issue of C. was not restricted to such failure at the time of her death, and was therefore too remote.

5th. That the estate which C. took under the will was not one that was converted into a fee simple estate by virtue of the statute to Direct Descents, but an estate for life, remainder to her eldest son in fee, with an executory devise by implication to her in tail male, until her eldest son became *in esse,* and which estate, she having had no male issue, terminated at her death.

6th. That at the death of the testator C. and E. became entitled to a reversion in fee, as heirs-at-law of the testator, subject to the life estate of his widow, and to a life estate, and estate in tail male

by way of executory devise in C., subject to be divested upon the happening of a future event, which never happened.

7th. That C. having died in infancy and unmarried, the estate had devolved upon E. as heir-at-law of her father and of her said sister.

When the terms "in fee" without adjunct, are used as applied to estates, they are to be taken as descriptive of a fee simple,—the highest and most enlarged estate—as contradistinguished from a fee-conditional or a fee-tail.

Estates in tail male, or estates tail female, are not included within the definition of estates tail general, as these latter terms are employed in the Act to Direct Descents, of 1820, ch. 191, sec. 1, and by which Act estates tail general are converted into fee simple estates, and upon being so converted are saved from lapse.

Where a preceding executory or contingent limitation has failed to arise or take effect, (and whether it be by the death of the devisee in the life-time of the testator, or the non-existence of such devisee, the consequence is the same) the remainder over will nevertheless take effect.

The mere lapsing of intervening estates will never be allowed to defeat the remainder over, unless those estates be coupled with conditions upon which the subsequent limitations are in some way made to depend.

In this State (except in cases arising under the Act of 1862, ch. 161,) a limitation over of land to a devisee for life, after an indefinite failure of issue of a prior devisee, does not convert the indefinite into a definite failure of issue.

A devise or limitation must be good at the time of its creation; and if not good then, no subsequent accident or occurrence can make it good.

A will of real estate taking effect prior to 1862, after certain limitations over after failure of issue, contained the following provisions: "I hereby require and direct that before any person or persons herein named or specified, shall have possession or property under this will, he or she, if my son or daughter, shall pay to his or her brother or sister (if there be but one) the sum of five thousand dollars, or distribute among his or her brothers and sisters, (if there be two besides himself or herself) the sum of six thousand dollars, and (if there be three besides) the sum of seven thousand

dollars, and (if there be four or more) the sum of eight thousand dollars." HELD:

That this charge upon the devisee taking the estate did not operate as a condition precedent, and confine the meaning of the words to a dying without male issue within a period of time that did not infringe the rule of law against perpetuities.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was submitted to ALVEY, C. J., YELLOTT, STONE, MILLER, ROBINSON, IRVING, BRYAN, and Mc-SHERRY, J.

*Joseph Packard, Jr.*, and *Richard M. Venable*, for the appellants.

The whole will must be construed together and the proper construction of the last two paragraphs of the first clause in connection with the first paragraph, discloses the testator's true intention. The last two paragraphs provides:

"But as I do not wish to establish too great an inequality among my descendants, I hereby require and direct that *before any person* or persons *herein named or specified, shall have possession or property* under this will, he or she, if my son or daughter, shall pay" a sum varying according to the number of his or her brothers or sisters to such brothers and sisters.

"And if at the death of my beloved wife none of my children by her are living, these sums, as above named, shall be paid or distributed among their descendants *per stirpes;* and if some of them only be dead, then the money shall be paid and distributed to those who are living and to the descendants of those who are dead, the children standing in the place of their parents and sharing equally among themselves. But this clause

shall extend only to my children, grandchildren or lineal descendants."

These paragraphs manifestly attach a condition precedent to each of the series of estates in the first paragraph. It is as if there were inserted after each devise in the series, "on his (or her) paying" a sum of money, "and not before." It is a condition, because an estate or right is to arise on the performance of an act; the condition is precedent, because the act must be performed *before* the vesting of the estate. *Earle and McNier vs. Dawes*, 3 *Md. Ch. Dec.*, 230, *Brantly's Note; Corse vs. Patterson*, 6 *H. & J.*, 153; *Lyons vs. Orange, Alexandria and Manassas R. R. Co.*, 32 *Md.*, 18; *Bradley vs. The Potomac Fire Ins. Co.*, 32 *Md.*, 108; *Dalrymple vs. Lauman, et al.*, 23 *Md.*, 376, 401; *Mason vs. Martin, Kemp, et al.*, 4 *Md.*, 124; *Rice vs. R. R. Co.*, 1 *Black*, 360.

These authorities show that no language could be employed for the creation of a condition precedent more apposite than that used in this case.

Furthermore, the intention that no estate or right should vest until the payment of the money, appears from the fact that the language contemplates the case where a daughter should pay to a son or sons. By the first paragraph of the first clause the testator's sons were to take before the daughters, but by the next to the last paragraph "he or *she*, if my son or *daughter* shall pay to his or *her brother* or sister, &c." This contemplates the case of the testator having a son or sons, and their failing to pay, when the right to do so would pass to a daughter.

Until the performance of the condition no one in the series, on whom the right to perform might in succession devolve, had any interest or estate. He or she had a bare possibility. And if the condition is not fulfilled, nothing passes by the will. *Earle and Mc-*

*Nier vs. Dawes,* 3 *Md. Ch. Dec.,* 230; *Corse vs. Patterson,* 6 *H. & J.,* 153; *Lyons vs. Orange, Alexandria and Manassas R. R. Co.,* 32 *Md.,* 18; *Bradley vs. The Potomac Fire Ins. Co.,* 32 *Md.,* 108; *Dalrymple vs. Lauman, et al.,* 23 *Md.,* 376–401; *Mason vs. Martin, Kemp, et al.,* 4 *Md.,* 124.

The will therefore, does not contain a series of estates, each to take effect in derogation of the antecedent estate, or, in other words, a series of executory devises.    It names a series of persons, who in the order of precedence fixed, have the right, at a time designated, to perform the condition and thereby become entitled to an estate; and it contemplates the disturbance of this order by those having the prior right failing to fulfil the condition.

The time at which the condition is to be performed is also fixed; it is on the death of the testator's widow, far within the line of perpetuities.

The will means that those in the series alive at the widow's death may, in the order of priority fixed, become entitled to an estate by then performing the condition precedent.

The devises to the testator's several sons and their descendants did not take effect because he had no sons. One of the contingencies on which the estate is limited over to Harriet is, "if I have no sons."    And the limitation over on this contingency, which in the event actually happened, would not be invalidated because there was an alternative contingency—"or they all die without leaving male issue"—after which an estate could not be limited.    *Monypenny vs. Dering,* 2 *DeG., McN. & G.,* 145, cited and approved in *Goldsborough vs. Martin,* 41 *Md.,* 488; *Woolen vs. Frick,* 38 *Md.,* 428.

The clause providing that the daughters are to pay certain sums before they shall have possession or property, brings the case within a well recognized exception to the rule against perpetuities.

This exception is stated in the following terms :

"Where a sum of money or legacy is to be paid to some person mentioned in the will by the person entitled under an executory gift, upon its taking effect in possession or within a reasonable time after, the failure of issue, upon which the executory gift depends, will be restrained to the death." *Forth vs. Chapman, Tudor's Leading Cases,* 688; *Nichol vs. Hooper,* 1 *P. Wms.,* 198; *Doe vs. Webber,* 1 *B. & Ald.,* 713.

The principle of this exception is that where the devisee of the executory interest is to pay on taking possession to some one *in esse,* or who will be *in esse* within the line of perpetuities, it shows that the taking possession is to be within that line. Therefore the failure of issue meant, is a failure within that line; and the only fixed point at which to place it is the death of the person on which the estate is limited over to the executory devisee.

Emily is the only one on whom the obligation could, in the event, rest; and the fact that no person within the designated class, to whom the payment was to be made, then existed, does not alter the case. The principle of the exception to the rule against perpetuities covers such a case. That principle may be thus stated: The fact that an executory devisee living at the testator's death is required, on the happening of a contingency within the line of perpetuities, to pay a sum of money on taking possession, to persons ascertainable at that time, shows that the failure of issue, on which the executory devise is limited, must then have occurred according to the intention of the testator.

The fact that a future event had to fix to whom the money was to be paid, if that event was in the line of perpetuities, does not take the case out of the exception. In *Doe vs. Webber,* 1 *B. & Ald.,* 713, the executory

devisee was to pay to a person or persons appointed by the will of the first taker, and this was held to bring the case within the exception. Nor does the fact that in the event within that line, there was no one to whom it was to be made, take the case out of the exception.

Nor does the fact that the particular one of several devisees who is to make the payment is to be fixed by an event within the line of perpetuities take the case out of the exception.

The fact that the testator designated an event within the line, which fixed who of the devisees was to pay, and to whom it was to be paid, showed his intention that the failure of issue meant was one which had then occurred.

By the true interpretation of the whole clause, the testator did not intend any devisee to pay except one in existence at the death of his widow; and certain persons then to be *in esse* were to receive the money.

*D. K. Este Fisher, Wm. Cabell Bruce,* and *William A. Fisher,* for the appellees.

Charlotte Harper, the widow of the testator, took an estate for the term of her life only. The next limitation is to the eldest son of the testator in fee, and, in default of his male issue, over to the next son in fee, and so in a succession to his sons and their issue, in default of issue of previous takers; and then over to the eldest daughter for life. There is no language, therefore, which would give rise to an implication of an *estate tail in Mrs. Harper.*

Since the testator had no sons, in view of the language of the limitation over to Harriet, it is unnecessary to discuss the validity or effect of the limitations to or among sons and their issue.

The limitation to Harriet was upon two contingencies: First, of the testator having no sons; second,

of the failure of the male issue of the sons. The effect was to create under the first a contingent remainder, and, under the second, an executory devise.

It is needless to examine the effect of the attempt to limit the estate over upon the failure of the male issue of all the sons of the testator, because the first limitation was a good one, and was the one which, in the actual state of the family, governed the devolution of the title. The failure of sons to the testator was, of course, a proximate and not a remote event. The estate to Harriet for life, with remainder to her eldest son, in fee, was, in the event, substituted for the estate to the eldest son of the testator. The will in question is, in this respect, in close analogy to that of the late Mrs. Rachel Watson, the limitations over in which were sanctioned by the Court of Appeals in the case of *Woollen, Trustee, against Frick and others, Executors,* in 38 *Md.,* 428. A number of other cases are there referred to, and many others might be adduced, sustaining such limitations. There was a valid contingent remainder given for her life to Harriet. It never vested in her, however, because she died before the particular estate in her mother fell in.

The question now arises whether the devise over to Catherine is good. The devise is to Harriet for life, then to her eldest son in fee, "and if she died without male issue" then over. The expression "dying without issue" or "without male issue;" and kindred expressions, however they might be interpreted in a vulgar sense, import in deeds and wills (prior to the Maryland Act of 1862, ch. 261,) an indefinite failure of issue, which renders void the limitations depending upon them, because they are in violation of the rule against the creation of perpetuities.

This proposition is so fully established, that citations of authorities are unnecessary. It has been fully

and repeatedly recognized in Maryland. Among the authorities are: *Dallam vs. Dallam,* 7 *H. & J.,* 221; *Newton vs. Griffith,* 1 *H. & G.,* 111; *Woollen vs. Frick.* 38 *Md.,* 428.

The language of the devise over to Catherine, therefore, if standing alone, imports an indefinite failure of issue involving the destruction of all the subsequent limitations. But the question is always simply one of intention, whether the testator intended an indefinite failure of issue or a failure within the period sanctioned by law. Such words receive a more lenient interpretation when employed in relation to personalty than when used in a devise.

In the latter case, in order to tie up and confine the general words "dying without issue" to a dying without issue at the time of the death of the party, there must be something in the will clearly showing that to have been the intention of the testator, and restricting it to that time. *Newton vs. Griffith,* 1 *Harr. & Gill,* 118.

It may be suggested that a life estate is given to Catherine, and that this circumstance indicates a failure of issue in her life-time. Mr. *Lewis,* in his treatise on the *"Law of Perpetuity,"* enumerates, among the circumstances allowed to exercise a control over the general words, the fact that the limitation over after a dying without issue, is for a life estate only.

But this exception, if it be tenable at all in relation to realty in this State, has no application to Mr. Harper's will. The exception grew out of the judgment of Lord KENYON in the case of *Roe vs. Jeffrey,* 7 *Term Rep.,* 589, and that distinguished Judge did not extend it beyond a case in which there was a limitation over for a life estate *only.* Subsequently, in *Doe, dem. Jones vs. Owens,* 1 *Barn. & Ad.,* 318, the Court of Kings' Bench pointedly refused to extend the exception to a case in which there was a limitation over for life, fol-

lowed by a remainder in fee.    The learned writer, Mr.
Lewis, also gives it no further extension. *Lewis on
the Law of Perpetuity*, 52 *Law Lib.*, 212 *to* 218.

Under Mr. Harper's will, the limitation over extends
beyond a life estate.    The Court of Appeals of this
State has not, however, treated the proposition with
favor; and in the case of *Newton vs. Griffith*, already
mentioned, (1 *Harr. & Gill*, 124-127,) after an exami-
nation of the grounds for Lord Kenyon's judgment in
*Roe vs. Jeffrey*, declined to sanction a devise over even
for life only, after words importing an indefinite fail-
ure of issue.

The same subject is discussed by Mr. *Gray* from a
different side in his treatise on the *"Rule against Per-
petuities,"* sections 251-257, and a number of cases dis-
cussed.    Mr. Gray would regard the life estate in Cath-
erine to be good, but he concludes that the decisions
contravene his view.

It is worthy of observation that one of the leading
cases there criticised by Mr. Gray is *Monypenny vs.
Dering*, 2 *De G., McN. & G.*, 145, which was, however,
approved, and followed by the Court of Appeals in the
case of *Goldsborough vs. Martin*, 41 *Md.*, 503.    In other
words, though Catherine's estate was for life, it, like
other subsequent limitations, was involved in destruc-
tion by reason of the invalidity of the preceding limi-
tations.

The only other circumstance which can be relied
upon to limit the expression as to Harriet dying with-
out male issue, arises from the concluding sentences in
the clause of the will under consideration.

Mr. Lewis states, among the circumstances which
will control the words "dying without issue," the
"charge of a legacy or sum of money to be paid to any
person named in the instrument, by the person entitled
under the executory limitation, upon his future estate

vesting in possession," and we refer to his treatise for a full discussion of the proposition, and of the cases decided with reference to it up to the period when that work was prepared. 52 *Law Lib.*, 197-212.

It is doubtful whether the propositions would be sanctioned in this State.

But even assuming that Mr. Lewis' rule would be countenanced by the Maryland Courts, it is inapplicable to restrain the general language under discussion. The principle upon which the rule is invoked is that the charge "intends a *personal* provision, and points to a proximate event as the time of its taking effect, (if at all,) in favor of the person for whom it is made." Mr. Harper provided that, in order to prevent inequality among his descendants, "before any person named or specified in his will should have possession or property," he should pay a sum of money. The payment of this money was not necessarily to be made by one of his children, to one or more of his children. It was to be made at the death of his wife by the child, or descendants of a child, whoever might be entitled to take under the will, to his child, children or descendants, as the case might be.

Therefore, if the life estate to Harriet were good, and had vested at the death of her mother, *she* would have been the party, though only the life tenant, who took the possession and property, and was bound to make the payment. But it is the indefiniteness with respect to *her* issue which creates the difficulty, and, *obviously, that could not fail until some period subsequent to the time of payment, and, consequently, the definiteness or indefiniteness could not depend upon or be affected by the payment.*

If Harriet's life estate had vested, no payment was to be made at her death, and her issue might fail at some indefinite period afterwards. The result does not de-

pend upon the events which actually occurred, but upon the line of limitations intended by the testator. The circumstance, therefore, that Harriet died in the lifetime of her father is unimportant; but, if it were, Catherine survived her father, and the same difficulties would occur in reference to the limitations over to Emily, the appellee.

The limitation over in favor of Catherine and her sons was void, and the estate devolved upon the appellee, Mrs. William C. Pennington, as the only child and heir-at-law of her father, and the judgment of the Court below was therefore correct.

ALVEY, C. J., delivered the opinion of the Court.

This case was instituted under the provisions of the Act of 1888, ch. 478, now embraced in the Code as sections 26, 27, 28, 29, 30 and 31, of Article 16, sub-title, "Declaratory Decrees," for the purpose of obtaining a judicial declaration as to the rights of the parties upon a proper construction of the will of Charles C. Harper, deceased. The bill prays for no specific relief, but only for a declaration of the rights of the parties. And as the statute under which the proceeding is taken is new, and introduces a new feature into the practice of our Courts of equity, it is not improper for us to say in this case, the first that has been brought into this Court under the statute, that care is to be observed whether the case presented is of a nature proper for the discretionary exercise of the jurisdiction conferred. Doubtless, in some cases the jurisdiction may be very beneficially exercised; but it should never be invoked for the purpose of having determined mere moot-points, or mere abstract or experimental questions. In all cases the Court should see that there is a real *bona fide* question for controversy involved, as between the parties to the cause, and that there is an existing propriety for

its immediate decision.  It is only in those cases where equity would have jurisdiction, if some specific or ultimate relief were asked, that the Court would be warranted in proceeding under the statute to make a declaratory decree; and the statute expressly provides, that, "no Court shall make any such declaratory decree where the plaintiff is, in the opinion of the Court, *able to seek further relief than a mere declaration of title, but omits to do so.*"  In the case before us it does not appear that the plaintiff was able to seek other relief than a declaration of title, and consequently the Court below assumed jurisdiction and passed a decree *pro forma* declaring the rights of the plaintiff; and it is from that decree that this appeal is taken.

The will of Charles C. Harper bears date the 2d of August, 1834, and was admitted to probate on the 28th of October, 1837.  That clause of the will that gives rise to the questions presented on this appeal is as follows:

"1. To my beloved wife, Charlotte, to whom I owe so much happiness, I devise and bequeath, for and during the term of her natural life, my farm in Baltimore County, called 'Oakland,' as a home and residence for her and my children, with reversion at her death to my eldest son (if I have one, either born or in *ventre sa mere,*) for life, and after him to his eldest son in fee; and if my eldest son die without leaving male issue, then to my second son for life, with reversion to his eldest son in fee; and if he also die without leaving male issue, then to my third son, and so on, in the same manner.  And if I have no sons, or they all die without leaving male issue, then I devise and bequeath the reversion of Oakland to my dear daughter, Harriet, for her life, with reversion to her eldest son in fee; and if she die without male issue, then to my dear daughter Catharine for life, with remainder to her eldest son in

fee; and if she also die without male issue, then to my next daughter, and so on, in the same manner. And if none of my daughters leave male issue, then I devise and bequeath the reversion of the said farm, after the death of my beloved wife, to the eldest daughter of my eldest son for life, with remainder to her eldest son in fee; and if he leave no daughter, then to the eldest daughter of my second son for life, with remainder to her eldest son in fee, and soforth, with the daughters of my sons. And if none of my sons leave any issue, then to the eldest daughter of my daughter Harriet for life, with remainder to her eldest son in fee; and if she die without issue, then to the eldest daughter of my daughter Catharine for life, with remainder to her eldest son in fee, and so on with my other daughters, each in her turn. And if none of my children should leave issue, then" he proceeds to devise the farm to collateral relations. And at the conclusion of the clause containing the devises of the farm, he adds this: "But as I do not wish to establish too great an inequality among my descendants, I hereby require and direct that before any person or persons herein named or specified, shall have possession or property under this will, he or she, if my son or daughter, shall pay to his or her brother or sister (if there be but one) the sum of five thousand dollars, or distribute among his or her brothers or sisters (if there be two besides himself or herself) the sum of six thousand dollars, and (if there be three besides) the sum of seven thousand dollars, and (if there be four or more) the sum of eight thousand dollars. And if at the death of my beloved wife none of my children by her be living, these sums as above named shall be paid and distributed among their descendants *per stirpes;* and if some of them only be dead, then the money shall be paid and distributed to those who are living, and to the descendants of those

who are dead, the children standing in the place of their parents, and sharing equally among themselves. But this clause shall extend only to my children, grand-children and their lineal descendants.''

The facts as alleged and proved are, that Charles C. Harper, the testator, died in 1837, leaving his wife Charlotte surviving him, and that she died in 1867. That he, the testator, never had any sons, but had three daughters; the eldest of whom, Harriet, was born in 1828 and died in 1836, unmarried; Catharine, who was born in 1832, and died in 1841, unmarried; and Emily, one of the plaintiffs, who was born in 1835, and intermarried in 1853 with William C. Pennington, the other plaintiff, by whom she has had four children, two of whom died in infancy unmarried; and that Robert G. H. Pennington, one of the defendants, is her eldest child. All parties who could by possibility take interest under the will are made defendants to the proceeding.

The contention on the part of Mrs. Pennington, now the sole surviving daughter and heir-at-law of her father, is, that the limitations over in her father's will to her, and to her son, are both void, because too remote, and that she takes the farm called ''Oakland'' in fee, as heir-at-law, and not as devisee. But, as opposed to this, it is contended on the part of Robert G. H. Pennington, that his mother takes a life estate only as devisee under the will, with remainder over in fee to himself, as eldest son. Which of these contentions is maintainable is the leading question presented on this appeal.

In construing the will we must have reference to the condition of the testator's family at the date of the will, and also at the date of the testator's death, from which time the will took effect. In the events that have occurred, this reference is of importance in the

construction of the limitations of some of the devises of the will.

There is no question in regard to the estate taken by the wife of the testator in the farm, Oakland. She took a life estate, which continued until 1867. The remainder of the estate in the farm was limited to the unborn son or sons of the testator, for life, and to the eldest son of the first son of the testator who might have a son to take, in fee. But the testator had no son, and in the will he contemplated that contingency, and provided, *that if he had no sons,* the remainder of the estate in the farm, subject to the life estate of the wife, should go to his daughter Harriet for life, with remainder to her eldest son *in fee;* and if she should *die without male issue,* then to his daughter Catharine for life, with remainder to her eldest son *in fee;* and if she should *die without male issue,* then over with similar limitations to his next and other daughters, and their eldest sons, in succession.

The devise over to the eldest son of the devisee for life was a devise in fee simple; for, as laid down by *Littleton, sec.* 293, it is to be understood when it is said "that a man is seized in fee, without more saying, it shall be intended in fee simple; for it shall not be intended by this word *in fee* that a man is seized in fee tayle, unless there be added to it this addition, fee tayle, &c." And *Coke, (Co. Lit.,* 189a,) in his *Commentary* on this sec. of *Littleton,* says: "This is evident, and *secundum excellentiam* it shall be taken for the highest and best fee, and that is fee simple." And so *Blackstone, (Com., bk.* 2, *p.* 106) lays it down, that when the terms *in fee,* without adjunct, are used, as applied to estates, they are to be taken as descriptive of the highest and most enlarged estate, as contradistinguished from a fee conditional at the common law, or a fee tail by the statute *de donis.* Therefore,

as the preceding executory limitations to the eldest son of the sons of the testator, in succession, carried the whole interest in the estate, the subsequent limitations to the daughters and their eldest sons in succession are not to be considered as limitations upon the preceding, and only to take effect after them, but the latter are to be taken as alternatives substituted in the room and stead of the former, and to take effect only in case the preceding limitations should fail and never take effect at all. *Fearne, Cont. R. & Ex. Dev.*, 523. Hence, as the preceding limitations to the sons had failed, such son or sons never having come into being, the devise to the daughter Harriet, with the limitation over to her eldest son, would have been good, if she had survived her father, or had had a son living after the date of the will. But Harriet died in the life-time of the testator unmarried; and unless she took a descendible estate by the limitations of the will, such as would descend in fee simple to her kindred, male and female, as provided by the Act of 1820, ch. 191, to direct descents, all her possible interest in the farm terminated with her death; and the Act of 1810, ch. 34, sec. 4, to prevent the lapsing of devises could have no application. By the express terms of the will she was given a life estate only, with a contingent remainder over to her unborn eldest son in fee. But the limitation over to her sister Catharine was upon her *dying without male issue;* and therefore, giving these latter words their natural and legal effect, the most that could be claimed that she could take under the will, would be an *estate tail male* by implication, by way of executory devise. And conceding (as we think may well be done) such to be the estate that would have become vested in her, if she had survived the testator, the question is, would such an estate be within the meaning of the terms "fee tail general,"

as employed in the Act to direct descents, of 1820, ch. 191, sec. 1? According to settled construction, *estates tail male,* or *estates tail female,* are not included within the definition of *estates tail general,* as these latter terms are employed in the Act, and by which Act *estates tail general* are converted into fee simple estates, and which estates tail general, upon being so converted into fee simple estates, are saved from lapse by the statute. *Act* 1810, *ch.* 34, *sec.* 4; *Newton vs. Griffith,* 1 *H. & G.,* 111, 128, 129; *Simpers' Lessee vs. Simpers,* 15 *Md.,* 160; *Posey vs. Budd,* 21 *Md.,* 477, 486. The distinction is a clear one between the case of a limitation to a person and the heirs of his body, which creates an estate *tail general,* and that of a limitation to him and the heirs *male* or the heirs *female* of his body, which creates an estate *tail special,* descendible in the male or female line, to the exclusion of heirs of the body generally. 1 *Crui. Dig., tit.* 2, *ch.* 1, *secs.* 13, 14, 15, *p.* 79; 2 *Wooddes., sec.* 9; 3 *Jarm. on Wills,* 89; 1 *Washb. R. P.,* 90, 91. It is clear, therefore, if the elder daughter had survived the testator, but died without having had male issue, and supposing that she would have taken under the will an estate tail male by implication, by way of executory devise, that estate would have been held *per formam doni,* unaffected by our Act to direct descents, but subject to be docked under the *Act of* 1782, *ch.* 23. *Newton vs. Griffith,* 1 *H. & G.,* 112. But having predeceased the testator, without ever having had male issue, the limitations both to her and to her eldest son totally failed of all effect, and may be considered as completely eliminated as if they never had place in the will. And that being the case, the principle is, that as the preceding executory or contingent limitations have failed to arise or take effect, (and whether it be by the death of the devisee in the life-time of the testator,

Pennington, *et al. vs.* Pennington.

or the non-existence of such devisee, the consequence is the same,) the remainder over will nevertheless take effect, the first estate being considered only as a preceding limitation, and not as a preceding condition to give effect to the subsequent limitation. *Fearne, Cont. R. & Ex. Dev.*, 510–513; 1 *Pow. on Dev.*, 196–202, *and notes; Redf. on Wills, pt.* 2, (*1st Ed.*,) 595. For as declared by Lord HARDWICKE, in *Avelyn vs. Ward*, 1 *Ves., Sen.*, 420, "*if the precedent limitation, by what means soever, is out of the case, the subsequent limitation takes place.*" The mere lapsing of intervening estates will never be allowed to defeat the remainder over, unless those estates be coupled with conditions upon which the subsequent limitations are, in some way, made to depend. This principle, as founded in justice, and as having due respect to the manifest intention of the testator, has been affirmed in many cases; and it is the leading principle of the important cases of *Hopkins vs. Hopkins, Cas. Temp. Talbott*, 44; *Avelyn vs. Ward*, 1 *Ves., Sen.*, 420; *Gulliver vs. Wickett*, 1 *Wils.*, 105, and *Doe, dem. Wells vs. Scott*, 3 *M. & S.*, 300. And such being the well established principle, the limitation over to the daughter Catharine was good and effectual, she having survived the testator, though she died without a son. That limitation, as we have already seen, was to her for life, with remainder to her eldest son *in fee;* and if she should *die without male issue*, then over to the next daughter of the testator, the plaintiff in this cause, upon similar limitations. The will operated only from the death of the testator; and all the preceding devises and limitations of the estate to the children and grandchildren of the testator having failed to become effectual, the limitations to Catharine and her son, subject to the life estate of the widow, were the first to have vitality and operation; the limitation to the unborn son of

Catharine operating as a contingent remainder, dependent upon the precedent freehold estate for life. But Catharine died a few years after the death of the testator, without ever having had issue, male or female; and the question is, whether the succeeding limitations over be good and effectual to carry the estate.

There is nothing in the terms of the subsequent devise over to restrict the failure of *male issue* of Catharine to the time of her death; and if not so restricted by circumstances apparent in other parts of the will, it is. clear, upon all authorities, the devise over would be too remote. The simple fact that the devise over was to a party *in esse* for life, was not sufficient, as the law stood at that time, to qualify the general rule of construction; for the settled rule of construction in this State is, (except in cases arising under the Act of 1862, ch. 161,) that a limitation over of land to a devisee for life, after an indefinite failure of issue of a prior devisee, does not convert the *indefinite* into a *definite* failure of issue. *Newton vs. Griffith, supra; Watkins vs. Sears,* 3 *Gill,* 492. According to established rules of construction, therefore, the terms, *male issue,* would embrace all male descendants of the male line of Catharine to the remotest generation; and a limitation over, by way of executory devise, can only take effect on an event or contingency *that must happen,* if at all, within a life or lives in being, and twenty-one years and a fraction of a year afterwards. *Dallam vs. Dallam,* 7 *H. & J.,* 220. The devise or limitation must be good at the *time of its creation;* for if not good at its creation, it is well settled that no subsequent accident or occurrence can make it good. Or, as Mr. Fearne states the rule, "if the expiration of that preceding limitation, or if that future event, be of too remote a nature, the future limitation is void in its creation, and no subse-

quent accident can make it good; because it is not limited to take effect or to fail upon the event of a contingency which must be determined one way or other within the period allowed by law for the vesting of an executory devise, but is limited absolutely to take effect on an event which *may not happen* within such a period." *Rem. & Dev.*, 524. The general principle, therefore, that the contingent event of a party dying without issue generally, or without issue male or female, where there are no terms of restriction used, is too remote to support a devise over, is so familiar a doctrine, that nothing more is required than a simple reference to some few of the cases in this Court, where the subject has been discussed and the principle maintained; as in the cases of *Dallam vs. Dallam, supra ; Newton vs. Griffith, supra; Wallis vs. Woodland*, 32 *Md.*, 105, 106; *Woollen vs. Frick*, 38 *Md.*, 428. It is clear, therefore, if there be nothing else in the will to restrict the event of the limitation over, than the terms of the devise itself, such limitation is void and wholly without effect.

What particular estate the daughter Catharine took under the will, may not, perhaps, be very material to decide in this case, except to show that she did not take an estate that was converted into a fee simple estate by virtue of the statute to direct descents. Upon principle, and the force of decided cases, it would seem clear that she took an estate for life, remainder to her eldest son in fee, with an executory devise, by implication, to her *in tail male*, until such eldest son became *in esse;* and which estate, as we have already shown, terminated with her death. In the case of *Bean vs. Halley*, 8 *T. Rep.*, 5, under a devise to A. for life, without impeachment of waste, remainder to his eldest son, and the heirs of such eldest son, and *in default of issue male of A.* then to B., &c. A. died without ever having had issue male, and it was held, that A. took an

estate for life, remainder to his eldest son in tail, remainder to himself in tail male.    See also *Key vs. Key,* 4 *De Gex, M. & G.,* 73.; *Andrew vs. Andrew, L. R.,* 1 *Ch. Div.,* 410 ; 3 *Jarm. on Wills,* 272.

The counsel for the defendant, while they do not question that the devise over would be void for remoteness if that devise rested simply upon the terms of the devise itself, yet they argue that there are circumstances apparent on the face of the will that are sufficient to modify and cut down the ordinary construction of those terms, and to confine the meaning of them to a dying without male issue within a period of time that does not infringe the rule of law against perpetuities.    They insist that the requirement, as provided in the latter paragraphs of the first clause of the will, that any child or person named, taking the estate under the will, should pay out to brothers or sisters, or their descendants, a sum of money, varying according to the number of such brothers and sisters, constitutes a condition precedent *to the vesting* of the estates devised by the will; and that, as the money was not to be paid before the death of the widow, whenever that might occur, no estate could vest until then; and that, therefore, the rule against perpetuities does not apply.    Or, in other words, as the proposition is stated by counsel, that the true meaning of the will is, that those in the series of devises living at the death of the widow could, in the order of priority fixed, become entitled to a vested estate by then performing the condition precedent, that is, the payment of the money as required; and until then no estates vested in the devisees under the will.

But, however ingenious such contention may be, we cannot accede to it as the true legal construction of the limitations upon which the several devises are made.    It is true, it is declared by the testator that

before any of his devisees named *should have possession
or property* under the will, his son or daughter, as the
case might be, should pay a certain sum of money.
But we cannot construe this requirement as constitu-
ting a condition precedent to the *vesting* of the estates
under the devises, whatever might be its effect as a
condition to the possession or enjoyment of the property.
It could hardly have been intended, and it is certainly
not the legal construction of the terms employed, that
all the estates devised by the testator to his children
and grand-children should remain suspended until the
death of the widow, however remote that event might
be. Suppose the widow had died within a year after
the death of the testator, what would have been the
condition of the estate and family in such an event?
There would have been two infant children, Catharine
and Emily, entitled to the estate. Catharine, accord-
ing to the construction of the limitations of the will,
would have been entitled in the first instance to a life
estate, and, by way of executory devise, to an estate
in tail male, with the reversion in fee in the two chil-
dren, as heirs-at-law of the testator, subject to be di-
vested upon the happening of a future event, but which
in fact has never happened. If by possibility Cath-
arine had survived her mother and paid the money as
required to produce equality with her sister, would
that have conferred upon her the absolute fee simple
estate? Clearly not. If she, surviving her mother,
had in the course of years married and had issue a son,
would not that son have been entitled, by the express
limitation of the will, to the fee simple estate, notwith-
standing his mother had paid the equality money to
her sister, upon the death of the widow of the testator?
Of this we think there could be no doubt. How then
does the charge upon the devisee taking the estate
operate as a condition precedent and confine the period

of the vesting of the estate to the death of the widow? By the terms of the will an indefinite failure of issue male is made the event upon which the devise over is to arise and take effect, and that ·event might not occur within a˙ century after the death of the widow; and unless we were to do violence to the terms of the limitation in the devise, and disregard the established rules of construction, this Court could not say that the indefinite should be reduced to a definite limitation by the death of the widow and the payment of the equality money.    The vesting of the estate under the devises is in no manner dependent upon the event of the death of the·widow.    Whether the required payment should be construed to be a condition subsequent, or a mere trust operating as a charge upon the estate, are questions that we need ꞑot decide; but Courts are averse to construing conditions to be precedent where they might defeat the vesting of estates under a will.    *Creswell vs. Lawson,* 7 *G. & J.,* 228, 240.

The case of *Doe, dem. Smith vs. Webber,* 1 *B. & Ald.,* 713, relied on by the defendant, is well explained by ROLFE, B., afterwards Lord Chancellor CRANWORTH, in delivering the opinion of the Court of Exchequer in *Doe, dem. Todd vs. Duesbury,* 8 *M. & Wels.,* 514.    The case as there explained gives no support to the contention of the defendant in this case.    There the party for whose benefit, or for the benefit of whose immediate nominee, the charge was to take effect, was herself the party the failure of whose issue was in question, and the Court, upon the whole context of the will, concluded that the charge, which was *certainly not to arise till after* the failure of issue in question, was to arise (if at all) *immediately on the death of the tenant for life ;* and the consequence necessarily was, that the failure of issue contemplated by the testator was a failure of issùe at the death of the tenant for life.    The case of

County Comm'rs of Prince George's Co. *vs.* Comm'rs of Laurel.

*Todd vs. Duesbury* is a well considered case, and is a strong authority against the contention of the defendant in this case.

It follows that this Court is of opinion, that the devises over to Mrs. Pennington and her son were void, as being too remote, and, as the consequence, the estate has devolved upon Mrs. Pennington as heir-at-law of her father and of her sister; and therefore the decree of the Court below must be affirmed.

*Decree affirmed.*

(Decided 27th March, 1889.)