# GREEN *v.* GORDON.

REMAINDERS; CONDITIONS; ESTATES; WILLS.

1. Vested remainders (or remainders executed, whereby a present interest passes to the party, though to be enjoyed in futuro) are where estate is invariably fixed to remain to a determinate person after the particular estate is spent.

2. Contingent or executory remainders, whereby no present interest passes, are where the estate in remainder is limited to take effect, either to a dubious and uncertain person, or upon a dubious and uncertain event, so that the particular estate may chance to be determined, and the remainder never take effect.

3. The law favors the vesting of estates, and is inclined to treat conditions as subsequent rather than as precedent.

4. If a condition subsequent be possible at the time of making it, and becomes afterwards impossible to be complied with, by the act of God or the law or the grantor, the estate, having once vested, is not thereby devested, but becomes absolute.

5. Estates will be held to vest at the earliest possible period, unless there be a clear manifestation of the intention of the testator to the contrary. Adverbs of time, such as "when" in a devise of a remainder, are considered to relate merely to the time of the enjoyment of the estate, and not to the time of the vesting of the interest.

6. Whenever a contingent remainder amounts to a freehold estate, it must be preceded by a vested estate of freehold.

7. Where the apparent intent of a testator is to provide for certain of his children, the court will hesitate to so construe his will as to eliminate the descendants of one of them from participation in the estate.

8. It is the present capacity to take effect in possession, if the precedent estate should determine, which distinguishes a vested from a contingent remainder.

9. A testatrix, owning a large tract of land, after devising two small portions of it to her sons, George and Osceola, respectively, with remainder to her other children if either of the sons should die without issue, devised the residue to her four daughters for their support, while they should remain unmarried; and provided that if any one of them should marry and be left a widow, and destitute of support, she should be entitled to maintenance from the property, "it being my will and object to provide for the helpless of my children;" and also provided that if all the daughters should marry, the residue should be equally divided among the heirs of the testatrix. The son George was named as executor. Thereafter, the testatrix conveyed to George in fee the portion of the tract which she had devised to him. She then made a codicil to her will providing as follows: "Having put my son George F. Green in possession of that portion of land, which I designed for him and my daughters having all married except Maria Devereux and Rebecca Ann Green, all except those two, are excluded from any participation in my property, & when they may have married or died, I wish the property to go to

Osceola C. Green, my youngest son, upon his paying the sum of one thousand dollars to each one of his sisters who may be at that time alive,—in the event of his not accepting the property, I wish my oldest son George F. Green to have the next choice to take the property on the same terms;—it is my wish should he decline to take the property on the same terms, that the same offer be made to each of my daughters in the order of their respective ages, that may be living at that time; upon all rejecting it, it is my will that the furniture, House, & land that had been left to my daughters Maria Devereux and Rebecca Ann Green for their lifetime be sold for what it may bring & divided among my heirs generally." On the death of the testatrix she left surviving her the two sons and the two unmarried daughters, Maria and Rebecca, and four married daughters. Thereafter Osceola sold and conveyed a small portion of the undisposed of land, upon which he and his unmarried sisters were living, to one Hubbard, he and his unmarried sisters uniting in the deed; and shortly afterwards the four married daughters and George and his wife executed deeds to Hubbard for the land so purchased, said deeds reciting "that whereas the said Osceola C. Green has elected to take said real estate upon the terms of said will, and he and the said Maria Devereux and Rebecca A. Green have agreed to sell the real estate hereinafter described to the said Gertrude M. Hubbard." Following the sale to Hubbard, Osceola paid his unmarried sisters each $1,000, and placed on record a formal declaration in which he expressly elected to accept under the terms of his mother's will. Thereafter, he sold a large part of the tract remaining unsold for $153,000, the deed of conveyance being executed by himself and his two unmarried sisters. By arrangement with them he set aside $150,000 to be held as a special fund, from which they were to receive the income during their lives and the life of the survivor. Osceola died, leaving a will making bequests to his sisters and his brother, George, and providing for his daughter and certain heirs of his mother, George being the largest beneficiary. The legacies to George were paid him by the executors and trustees namd in Osceola's will, but after the death of George his heirs offered to return them, which offer was declined. Before his death, George notified his surviving sisters that he had elected to take the estate under the provisions of his mother's will, and tendered himself ready to pay each one of them $1,000 as provided therein. The executors and trustees under Osceola's will filed a bill in equity for instructions as to the distribution of the $150,000, and for a decree declaring that they held the unsold portion of the tract as part of the estate of Osceola. The heirs of George, who were made defendants, answered claiming the $150,000 and the land so remaining unsold. It was *held,* affirm-

ing a decree of the lower court:   (1) That Osceola took a vested, and
not a contingent, remainder, which was not affected by the annexed
condition requiring him to pay each of his surviving sisters $1,000
upon the death of the life tenants; (2) that such condition was dis-
charged by the payment of said sum in advance by Osceola, his acts
having shown an acceptance by him of the condition; and (3) that
the vested interest which Osceola took formed a part of his estate
and passed under his will.

No. 2338. Submitted January 12, 1912. Decided March 11, 1912.

HEARING on an appeal by the defendants from a decree of
the Supreme Court of the District of Columbia sitting as an
equity court, construing a will.                          *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is a proceeding in equity brought in the supreme court
of the District of Columbia by the appellees, plaintiffs below,
William A. Gordon and J. Holdsworth Gordon, trustees un-
der the last will and testament of Osceola C. Green, deceased,
for a judicial construction of the will and codicils of Ann
Green, deceased.   The issue was raised by the heirs-at-law of
one George F. Green, who claim certain property and real
estate situated in the District of Columbia known as Rosedale
farm, which was devised in the will and codicils of Ann Green.

The will of Ann Green was made on November 11, 1858.
The material parts are as follows:   "I give and devise that
portion of my lands known as the front field of the Rosedale
Farm to my son George, his heirs and assigns, and in case of
his death without issue, in remainder to my other children sur-
viving him.   I give and devise that part of my land known as
the new ground field, running from the fence which forms
its present western boundary, to Joshua Pearce's land, to my
son Osceola, his heirs and assigns, and in case of his death with-
out issue, in remaider to my other children surviving him.
All the rest of my estate, real, personal and mixed, I give,
devise and bequeath to my single daughters, *viz.,* Maria Dev-
ereux, widow of the late William Devereux, Rebecca Ann Green,

Mary Imogen Green and Louisa K. Green, during their single lives, to be held by all or one of them who may continue single, for their or her support; and should any married daughter be left a widow & destitute of support, it is my will that such daughter be thenceforth entitled, equally with the single ones, to a home and maintenance from such property as I may leave, it being my sole object to provide for the helpless of my children. * * * Should my surviving daughters all marry, then it is my will that the residue of my estate aforesaid be equally divided among all my heirs. * * * I constitute and appoint my son George the Executor of this my last will and testament."

December 19, 1866, Ann Green conveyed in fee to George F. Green the portion of the Rosedale farm which she had devised to him in her will, and on August 12, 1867, she annexed to her will the following codicil, which is the basis of the issue involved in this case: "Having put my son George F. Green in possession of that portion of Land which I designed for him, and my Daughters having all married except Maria Devereux and Rebecca Ann Green, all except those two are excluded from any participation in my property, & when they may have married or died, I wish the property to go to Osceola C. Green, my youngest son, upon his paying the sum of one thousand dollars to each one of his sisters who may be at that time alive,—in the event of his not accepting the property, I wish my oldest son George F. Green to have the next choice to take the property on the same terms,—it is my wish, should he decline to take the property on the same terms, that the same offer be made to each of my daughters in the order of their respective ages that may be living at that time; upon all rejecting it, it is my will that the furniture, House & land that had been left to my daughters Maria Devereux and Rebecca Ann Green for their lifetime be sold for what it may bring & divided among my heirs generally." A second codicil was attached to the will on July 28, 1868, in which she devised to one of her married daughters a small portion of the farm, providing that it should be for the use of the daughter

during her lifetime, and at her death descend to her children. This codicil has no relation to the issue here involved.

Ann Green died in September, 1870, leaving surviving her two sons, the two unmarried daughters, life tenants under the will, and four married daughters. On her death, the two unmarried daughters and Osceola C. Green, who was still single, occupied that portion of the farm remaining undisposed of at the time of her death. April 2, 1888, Osceola sold a small portion of the land to one Hubbard. On this date, Osceola and wife and the two life tenants executed a deed conveying this land to Hubbard.. The next day two of the married daughters executed separate deeds to Hubbard for the same tract, and a few days later, April 17th, the two remaining married daughters, together with George F. Green and wife, executed a deed for the same tract to Hubbard. The various deeds to Hubbard each contained the following recital: "Whereas said Osceola C. Green has elected to take said real estate upon the terms of said will, and he and the said Maria Devereux and Rebecca A. Green have agreed to sell the real estate hereinafter described to the said Gertrude M. Hubbard."

Following the sale to Hubbard, Osceola C. Green paid his sisters Louisa K. Norton and Elizabeth R. Quesenberry, each the sum of $1,000, and sent a similar amount to his other living sister, Mary Imogen Lewis, thus anticipating the payment of this amount to each of his sisters under the provisions of his mother's will. Mrs. Lewis refused to receive the share, but, after the death of Osceola, she requested payment, and was paid by the trustees under his will.

On February 10, 1892, Osceola C. Green placed on record in the District of Columbia a formal declaration in which he expressly elected to accept under the terms of his mother's will. Following this, on April 14, 1893, he sold to one Waggaman a large portion of Rosedale for a consideration of $153,000. The deed to Waggaman was executed by Osceola and the two life tenants. By an arrangement with the life tenants, he used a small portion of the proceeds of the sale to Waggaman in improving the part of Rosedale still remaining unsold, and

$150,000 was set aside to be held as a special fund from which the life tenants were to receive the income during their lives and the life of the survivor.

Osceola C. Green died on June 17, 1895, leaving a will and codicils under which the plaintiffs were named executors and trustees. In his will he made bequests to his sisters and to his brother, George, also providing for his daughter and for certain of the heirs of his mother, George being a beneficiary to an extent larger than any of his sisters. Plaintiffs, in administering the estate, delivered to George the articles bequeathed to him, and received his receipt as legatee for the same. After the death of George, which occurred in December, 1908, and during the pendency of this action, his heirs tendered to plaintiffs a return of said articles, which tender was declined.

The surviving life tenant, Rebecca Ann Green, died May 21, 1908. Shortly following her death George notified in writing Mrs. Norton and Mrs. Lewis that he had elected to take Rosedale under the provisions of his mother's will, and tendered himself ready to pay each of them the sum of $1,000, as provided for in said will.

On the 9th of July, 1908, the plaintiffs, as trustees under the last will and testament of Osceola C. Green, filed the original bill in this cause in the supreme court of the District of Columbia. The material objects of the bill are to obtain the instructions of the court as to the distribution of the $150,000 derived from the Waggaman sale in their hands as trustees, and also as to the administration of their trust under said will in connection with certain other real estate, a part of the estate of Ann Green remaining unsold. The material prayers of the bill are, first, for the interpretation of the wills of Ann Green and Osceola C. Green, and for the instructions of the court to the plaintiffs, as executors and trustees, as to their duties in the premises; and, second, for a declaration by the court that the said trustees have a fee simple title to the unsold portion of Rosedale, and an absolute title to the money part of said trust estate, and that George F. Green has no title thereto, save as a beneficiary under the will of Osceola C. Green.

George F. Green entered his appearance to the original bill by counsel, but died without having answered. On the 16th of February, 1909, a supplemental bill was filed by the plaintiffs, setting up the death of George and making his heirs at law and devisees parties defendant. Defendants answered admitting that the plaintiffs came into possession of the sum of $150,-000 as executors and trustees of the will of Osceola C. Green, and admitting that since the death of the surviving life tenant, plaintiffs have entered into the possession of the unsold portion of Rosedale, which they claim to hold subject to the provisions of said will. They deny, however, the legal right of said trustees to such possession, and deny that George acquiesced in the election of Osceola, but set up as matter of law the right of George to make his election upon the death of the surviving life tenant, denying the right of Osceola to have made his election prior thereto. In the answer they admit the receipt of the articles of personal property from the executors of Osceola, but allege that they have offered to return the same.

After a voluminous amount of testimony had been taken, the cause was submitted, and a decree entered sustaining the contention of the plaintiffs. From this decree the cause comes her on appeal.

*Mr. F. D. McKenney, Mr. A. A. Hoehling, Jr.,* and *Mr. A. S. Worthington* for the appellants.

*Mr. Ellery O. Anderson, Mr. Benjamin S. Minor, Mr. R. Ross Perry, Mr. R. Ross Perry, Jr., Mr. Barry Mohun, Mr. Samuel Maddox, Mr. H. Prescott Gatley,* and *Mr. Erskine Gordon* for the appellees.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

It is clear that we are here dealing with an estate in remainder. We must therefore first consider whether it is a vested or contingent remainder. "Vested remainders (or remainders executed, whereby a present interest passes to the

party, though to be enjoyed *in futuro*) are where the estate is invariably fixed, to remain to a determinate person, after the particular estate is spent." "Contingent or executory remainders (whereby no present interest passes) are where the estate in remainder is limited to take effect, either to a dubious and uncertain person, or upon a dubious and uncertain event; so that the particular estate may chance to be determined, and the remainder never take effect." 2 Bl. Com. pp. 168, 169.

To determine which of the above rules to apply to the estate devised by the will and codicils of Ann Green, it is essential to ascertain the intent of the testatrix. Where the intent can be inferred without difficulty from the instruments themselves, it is unnecessary to invoke the ancient canons of construction. We think the intent of the testatrix can be ascertained without difficulty from an examination of the instruments. It will be observed by the original will of 1858 that the testatrix was providing for three general classes of persons: First, her son George, his heirs and assigns; second, her son Osceola, his heirs and assigns; and, third, her four single daughters, who were given the residue of her estate "during their single lives, to be held by all or one of them who may continue single, for their or her support, and should any married daughter be left a widow and destitute of support, it is my will that such daughter be thenceforth entitled, equally with the single ones, to a home and maintenance from such property as I may leave, it being my sole object to provide for the helpless of my children;" providing, however, that should all of her daughters marry, the residue of the estate should be sold and divided among all her heirs. It is apparent that she was devising all of her fee simple estate. While she uses no words of inheritance, by the terms of the residuary devise she clearly intended to pass all of her title, interest, and estate in the devised lands. In the remainder, she was providing for what she terms her helpless daughters, or those who were not married, or anyone already married who might become a widow.

The intention disclosed in the codicil in question is not different. She had place dher son George in possession of the

land devised to him. Of that portion of her estate she had completely dispossessed herself. Her attention was again directed to the welfare of her "helpless daughters." In the meantime her daughters had all married except two. The married ones she excluded from any participation in her property, except upon the remote contingency that they, or any of them, should survive the unmarried daughters. Again, after creating a life estate or interest, so long as they remained single, for her two daughters Marie Devereux and Rebecca Ann Green, without the use of technical words of inheritance, she passed all her right, title, and interest in the devised property.

But before declaring this a vested remainder in Osceola C. Green, until such time as he might refuse to accept under the terms of the will, we must dispose of certain conditions which might at first seem to constitute barriers to the vesting of the remainder at the death of the testatrix. The codicil provided that the one accepting should pay each of the married daughters living at the death of the surviving life tenant the sum of $1,000. This is an express condition, but not such an one as to make this an estate upon condition precedent, or to reduce the remainder to a contingency. The law favors the vesting of estates, and is inclined to treat conditions as subsequent rather than as precedent. "If the act or condition required does not necessarily precede the vesting of the estate, but may accompany or follow it, and if the act may as well be done after as before the vesting of the estate; or if, from the nature of the act to be performed, and the time required for its performance, it is evidently the intention of the parties that the estate shall vest, and the grantee perform the act after taking possession, then the condition is subsequent." *Underhill* v. *Saratoga & W. R. Co.* 20 Barb. 459. Chief Justice Marshall, in the case of *Finlay* v. *King,* 3 Pet. 346, 7 L. ed. 701, said: "If, on the contrary, the act does not necessarily precede the vesting of the estate, but may accompany or follow it, if this is to be collected from the whole will, the condition is subsequent." It is apparent that the payments to the married daughters living at the death of the surviving life tenant could have been made

as well after the vesting of the estate as before. And this seems to be in accord with the intention of the testatrix.

Whether the codicil created a condition subsequent or a mere charge upon the land is unnecessary for us to decide, since the required payments have been made. But even if it was a condition subsequent, it was to be carried out only as to the married daughters living at the death of the surviving life tenant. If none were living, the condition would no longer exist. It is settled law that such a condition cannot affect an estate vested. As was said in *Davis* v. *Gray,* 16 Wall. 203, 21 L. ed. 447: "The rule at law is that, if a condition subsequent be possible at the time of making it, and becomes afterwards impossible, to be complied with, by the act of God or the law or the grantor, the estate, having once vested, is not thereby devested, but becomes absolute." The requirement, therefore, that each of the married sisters living at the death of the surviving life tenant should be paid a stipulated sum could be at most but a condition subsequent, which was discharged by payment in advance of the time required in the will. No one was, or could be, injured by this payment, except possibly Osceola; and, if he elected to take the chance, no one can now be heard to complain.

Counsel for defendants lay great stress upon the use of the word "when" in connection with the expression in the codicil, "when they have married or died, I wish the property to go to Osceola C. Green." We think the word "when" relates to the time of enjoyment of the estate when Osceola, or the one taking under the will, should enter into the possession and full enjoyment of the estate, and not to the time of the vesting of the remainder. In *Pennington* v. *Pennington,* 70 Md. 418, 3 L.R.A. 816, 17 Atl. 329, the words used were "before any person or persons * * * shall have possession or property under this will, he or she * * * shall pay," etc. The court, construing this provision, said: "The vesting of the estate under the devises is in no manner dependent upon the event of the death of the widow. Whether the required payment should be construed to be a condition subsequent, or a

mere trust operating as a charge upon the estate, are questions that we need not decide; but courts are averse to construing conditions to be precedent where they might defeat the vesting of estates under a will." To the same effect are the established rules of construction announced in *Doe ex dem. Poor* v. *Considine,* 6 Wall. 458, 475, 18 L. ed. 869, 874, as follows: "The law will not construe a limitation in a will into an executory devise when it can take effect as a remainder, nor a remainder to be contingent when it can be taken to be vested. It is a rule of law that estates shall be held to vest at the earliest possible period, unless there be a clear manifestation of the intention of the testator to the contrary. Adverbs of time, —as *where, there, after, from,* etc.,—in a devise of a remainder, are construed to relate merely to the time of the enjoyment of the estate, and not the time of the vesting in interest."

The most conclusive reason for not treating this as a contingent remainder is that it could not legally operate as such. It is an ancient rule of the common law that whenever a contingent remainder amounts to a freehold estate, it must be preceded by a vested estate of freehold. The rule is clearly stated in Fearne on Contingent Remainders, vol. 1, 10th ed. 281, as follows: "This rule depends upon the necessity there is for the freehold to pass out of the grantor at the time the remainder is created. If no freehold passes, how is the remainderman to have it? If it passes at all, it must pass either in the particular estate, or in some remainder limited after it; in a contingent remainder it cannot pass, because such remainder at the time of its creation passeth to or vests in nobody; and if it passes only in some vested remainder limited after the contingent remainder, then is such contingent estate precluded from ever rising at all; for that freehold then becomes vested in possession, which the contingent estate was limited to precede; and, of course, there is no room left for the introduction of the contingent freehold. It follows therefore that some preceding vested estate of freehold must be limited, to give existence to such a contingent remainder."

If, as contended by counsel for defendants, this is a contin-

gent remainder, and the right of election was deferred until the expiration of the life estate, an interval would have existed during the period of the election between the termination of the freehold life estate and the vesting of the legal freehold contingent remainder. The creation of an intervening period, in the absence of a conveyance of the remainder to trustees to hold during the interim, would operate to destroy the contingent remainder. "It is not only necessary that a vested legal freehold estate should precede a legal freehold contingent remainder, but some such preceding freehold estate must subsist and endure until the time when the contingent remainder vests, that is, until the contingency comes to pass; for it is a general rule that every remainder must vest, either during the particular estate, or else at the very instant of its determination." 1 Fearne, Contingent Remainders, 10th ed. 307.

To sustain the contention of counsel for defendants would be to deprive the children of Osceola of any participation in the estate, since he died before the surviving life tenant. This is inconsistent with the apparent intent of the mother. While she had given Osceola some land, she had given George much more. Emphasizing the fact in the opening words of the codicil, that she had already provided for George, it seems then to be her intent to provide for the rest of her children. Where this intent is apparent, courts will hesitate to construe a will so as to eliminate the descendants of one from participation in the estate. *Goodtitle ex dem. Hayward* v. *Whitby,* 1 Burr. 228, 1 Ld. Kenyon, 506; *Doe ex dem. Comberbach* v. *Perryn,* 3 T. R. 484; *Taylor* v. *Mason,* 9 Wheat. 325, 6 L. ed. 101; *Doe ex dem. Poor* v. *Considine,* 6 Wall. 458, 18 L. ed. 869; *Cropley* v. *Cooper,* 19 Wall. 167, 22 L. ed. 109.

The test as to whether this is a vested remainder is easily applied. Did Osceola C. Green have the capacity to take immediate possession at any time the precedent life estate should terminate? Either the death or marriage of the life tenants terminated the precedent estate, and admitted Osceola into full possession and title in fee. "It is the present capacity to take effect in possession, if the precedent estate should determine,

which distinguishes a vested from a contingent remainder. Where an estate is granted to one for life, and to such of his children as should be living after his death, a present right to the future possession vests at once in such as are living, subject to open and let in after-born children, and to be devested as to those who shall die without issue. A remainder, limited upon an estate tail, is held to be vested, though it be uncertain whether it will ever take effect in possession. A vested remainder is an estate recognized in law, and it is grantable by any of the conveyances operating by force of the statute of uses." *Croxall v. Shererd,* 5 Wall. 268, 288, 18 L. ed. 572, 579.

Thus construing the first codicil to the will of Ann Green, the interest devised to Osceola C. Green was a vested remainder, which vested on the death of a testatrix, with a charge or condition attached to pay a specified sum to each of the married daughters who should survive the life tenants. The condition which might have inured to the benefit of George F. Green,.and, if not accepted by him, to his sisters in succession, according to their ages, was one that could not inure to their benefit until Osceola declined to accept the conditions imposed upon him under the terms of the codicil. Although he placed of record a solemn declaration of acceptance before the death of the surviving life tenant, this was not necessary to preserve his rights. The conditional rights that might have inured to George or his sisters were not dependent upon the formal election of Osceola to accept the terms of the codicil, but upon his formal refusal to accept. In *Taylor v. Mason,* 9 Wheat. 325, 344, 6 L. ed. 101, 106, Chief Justice Marshall said: "The testator then directs, in addition to the change of name, that an oath prescribed in his will shall be taken, and then proceeds, 'and on his (the person that may have the right) refusing to comply with the above-mentioned terms, to the next male heir, on the same terms.' The property is, in the first instance, devised to all the male heirs of J. T. M., the oldest to take first. The testator then proceeds to describe the state of things in which the next oldest is to take. That state of things is the refusal of the oldest to comply with the terms annexed to the

estate given to him. Upon this refusal, the devise is immediate. No intervention of the heir at law is necessary to defeat the title of the oldest, and to vest the property in the next male heir. But until this refusal, the rights of the oldest remain unchanged." The recorded declaration of Osceola C. Green, and other acts in regard to the property, we think clearly establish his acceptance; consequently a reliance upon legal presumption is unnecessary. As we have held that the devise to Osceola took effect immediately upon the death of the testatrix, his recorded acceptance did not strengthen the title he already had, but it became a matter of public notice, and thereby became indefeasible, and could only be devested by a renunciation.

The record discloses with convincing clearness that the heirs understood it to have been the intention of Ann Green that Osceola should succeed to the estate unless he refused to accept the conditions imposed in the will. This becomes important when we consider that the children were of mature age at the time of the mother's death, and must have had knowledge of her wishes in regard to the disposition of her property. It is evidenced by the deeds to Hubbard, made at a time before the property had attained great value, and concurred in by all the heirs, in which it is recited that Osceola C. Green had already elected to accept the terms of the codicil. This was an open public declaration of the understanding that the heirs had of the intent of the testatrix as to the distribution of her property. It should also be remembered that George F. Green was named as executor in his mother's will, and he, above all, will be presumed to have known of her intent as to the time of election. If she had not intended that the right should be exercised at her death, it is inconceivable that George should have acquiesced in the sale to Hubbard, including in his deed the declaration that Osceola had elected to accept under the terms of the will.

The presentation of a deed by Osceola C. Green at a subsequent date by advice of his counsel, to George F. Green and the other heirs, for execution, does not necessarily indicate a failure on the part of Osceola to have elected to accept under the codicil. This deed may have been prepared and presented,

as seems evident from the record, as a precautionary measure to remove any question of doubt that might thereafter be raised as to the correct meaning of the will, and to enable Osceola to freely control and dispose of the property. Neither do we think that the refusal of George to execute this deed, in the light of his execution of the Hubbard deed, is any evidence of his understanding that Osceola had failed to elect to accept the provisions of the codicil, or that the right of election was deferred until the death of the surviving life tenant. The property had greatly enhanced in value, and the presentation of this deed to George may have created in his mind the idea that it was possible to defeat the rights of Osceola under the will, and thereby make the condition of the codicil inure to his benefit. In this view of the case we attach little importance to the evidential effect of this deed, especially in the absence of any formal declination on the part of Osceola to accept.

It may be suggested further, as significant of the understanding the children had of the mother's intention, that George F. Green, recognizing the validity of the will of Osceola C. Green where he devised the interest he had acquired from his mother's estate, accepted certain devises made to him by his brother, Osceola. It is true that the heirs of George, who are now interested in the outcome of this litigation, have tendered a return of this property to the heirs of Osceola, but that cannot dispense with the evidential effect of the action of George in originally accepting these bequests.

It being true that the interest thus devised to Osceola C. Green was a remainder, of which he became vested at the death of his mother, his title thereto would continue until he formally, or by undoubted implication, declined to accept the conditions imposed by the testatrix. It is not material that he died prior to the surviving life tenant, since this vested interest formed a part of his estate that descended to his heirs and devisees under his will.

The decree is affirmed, with costs, and it is so ordered.

*Affirmed.*