GRACE SIEDLER et al.

*v.*

PARKER SYMS, executor, et al.

[Filed September 20th, 1897.]

A testator gave national bank stock to the bank's cashier, in trust, to distribute the dividends to designated employes during the corporate existence of the bank, "either under its present charter or by virtue of any renewals or extensions thereof." The bank was incorporated on June 19th, 1865, for the period of twenty years, and its existence was extended twenty years under the federal law of 1882. Testator died in November, 1891, and no law then or has since existed authorizing any further extension.—*Held,* that the gift violated the rule against perpetuities, and was void in that the trust might not be completely performed in twenty-one years.

---

*Mr. Washington B. Williams,* for the complainants.

*Mr. Charles L. Corbin,* for the trustee.

STEVENS, V. C.

The controversy arises over the sixth clause of the will of Samuel R. Syms, who died in November, 1891. The clause, so far as material, reads as follows:

"*Sixth.* I direct my executors to transfer to such person as shall at the time of my death be the acting cashier of the First National Bank of Hoboken, New Jersey, eighty shares of the capital stock of said bank, now in my name, to be held and used by said cashier and his successor and successors in office,

in trust, for the following uses and purposes, to wit: To collect and receive during the corporate existence of said bank, either under its present charter or by virtue of any renewals or extensions thereof, the dividends made and declared payable from time to time thereon, and upon the first days of January in each and every year thereafter to divide and distribute such dividends equally among all the clerks and employes (including the cashier and janitor) of said bank, who shall at the time of such distribution be actually employed therein and whose employment in said bank shall have continued for a period of at least two years. * * * In case said bank shall by dissolution or otherwise cease to exist, then, and in that event, I give and bequeath the said eighty shares of stock, together with any increase of shares thereon, as aforesaid, or the money payable in lieu thereof, to the Bank Clerks' Mutual Benefit Association of the City of New York, to be held and invested by said association as a part of its permanent fund, and the income arising therefrom to be used and employed as may be directed by the constitution and by-laws of said association."

It is plain that neither the bequest to the cashier of the First National Bank nor the bequest over to the Bank Clerks' Mutual Benefit Association is charitable. Not being charitable, the objection made to them is that they violate the rule against perpetuities.

The gift in the first instance is to the cashier of the bank and its successors, in trust, to collect and receive during the corporate existence of the bank, either under its present charter "*or by virtue of any renewals or extensions thereof,*" the dividends received, and on the 1st day of January of each and every year thereafter to divide them among the employes designated. If this is a trust which is to continue more than twenty-one years from the death of the testator it is invalid.

The bank was incorporated on June 19th, 1865, for the period of twenty years. Its corporate life would have ceased on June 19th, 1885, had it not been extended for a further period of twenty years under the provisions of the federal law of 1882. Its charter will therefore expire on June 19th, 1905. It is admitted that at testator's death there was no act of congress under which any further extension was authorized, nor is there now. If the testator had limited the gift to the corporate existence of the bank, I should have thought, as we could only deal with the facts as they were at the time of testator's death, and

as one of those facts was that the charter of the bank would expire within twenty-one years and could not be extended beyond that time, that the gift was unobjectionable for the reason that the trust must have been completely performed within the legal period.  But the testator has not limited the trust to the legal period.  He has expressly declared that it shall continue during all renewals and extensions of its present charter.  He has thus, in terms, provided for its indefinite prolongation ; for a prolongation which *might* perpetuate it far beyond the legal period.  It is true that the life of the bank *might* terminate in 1905, either because of the refusal of congress to legislate further on the subject, or because of the refusal of the bank to continue its existence.  But in the class of cases we are dealing with the question is not whether in the event that has happened or may happen the gift will have complete effect within the time prescribed, but, in the language of Baron Rolfe, in *Dungannon* v. *Smith, 12 Cl. & F. *575*, whether the gift in all its different contingencies *must* have such effect.

It is an invariable principle, in applying the rule in those cases, says Mr. Jarman, that regard is to be had to possible not to actual events, and the fact that the gift *might* have included objects too remote is fatal to its validity, irrespective of the event.  *1 Jarm. Wills *233*.

The decision in the case of *First·Presbyterian Church* v. *State Bank, 28 Vr. 27,* affirmed on error, seems to me to have some pertinency to this part of the argument.  There the bank had given to the church a sealed instrument, in which it was agreed that so long as the church would refrain from extending its buildings westward, so as to obstruct the light on the south side of the bank building,

"we [the bank] will pay to them [the trustees of the church] the yearly sum of $700, in quarter-yearly payments, commencing on the first day of July next, and after that rate for any portion of a year."

It appears from the record in the case that the bank was organized in 1865 and was to continue for twenty years.  The covenant was made in 1872 and *before* any act of congress had

authorized banks to prolong their existence. The bank took advantage of the act of 1882 and extended its corporate life for twenty years. One of the questions was, whether the covenant was binding after the expiration of the original charter. I was counsel for the bank and, both in the supreme court and in the court of errors, strenuously contended that this covenant must be read in connection with the charter and the act of congress, and that so read it was a contract to pay only during its original charter life ; that at the time the covenant was entered into the law provided that at the end of twenty years the bank *must* terminate its existence and that it *must not* thereafter perform any corporate act except the act of winding itself up. But both courts, in adjudging the covenant binding on the bank in the year 1892, necessarily adjudged that it was a covenant to pay not only during the period of the bank's existence under the original charter, but during such further extension of that existence as congress might *thereafter* authorize and the bank choose to accept. This case decides that it was *lawful* to make, and that the parties did in fact make, a contract which was to operate beyond the time prescribed by the charter and by the law as it then was for the bank to exist, and that, too, without any words which, in terms, provided for such a continuance. In the face of this decision it seems impossible to assert that it was not competent for the testator to provide in terms that his gift should be enjoyed by the employes of the bank under future extensions of the charter, if they should be authorized by congress. That he has done so is clear. The words " by virtue of any renewals or extensions thereof" cannot be rejected without materially changing the scope of the bequest, a bequest as much intended for the benefit of those employed by the bank twenty-five years hence, if the bank is then in existence, as now. His gift, therefore, being for the benefit of those who may be employes after as well as before the expiration of the legal period, will not, in all its different contingencies, have complete effect within the time prescribed.

It seems impossible, in the light of the adjudications, to split the bequest into two by reading it as a gift in trust, first, for

such persons as might be employed by the bank under its present charter, and secondly, for such as might be employed under future renewals and extensions of that charter. "When," says Baron Rolfe in the case I have mentioned, "a testator has made a general bequest embracing a great number of possible objects, there is no authority for holding that a court can so mould it as to say that it is divisible into two classes, the one embracing the lawful and the other the unlawful objects of his bounty." And that case, decided by the house of lords, after hearing the opinions of eleven of the judges, affords the strongest possible illustration of the stringency of the rule.

In the present case the court would give more effect to the testator's intention to confer a benefit on the employes of the bank of which he had been so long president, if it declared that the gift was good not only for the fourteen years subsequent to testator's death (during which it would exist under its present charter), but also for such further period as would, with this fourteen years, make up a term of twenty-one years, than it would if it declared that the gift was valid during the fourteen years only. It would hardly be contended, however, that this could be done. If it could, it might, with equal propriety, have been done in the case of *Detwiller* v. *Hartman, 10 Stew. Eq. 347,* and in all those cases in which the testator has attempted to create a trust not charitable, to continue indefinitely or for a period beyond the legal one.

As the first trust is void because it may endure too long, of course the gift over, which is not to take effect until the first trust is completely performed, must be void also.