(89 South. 565)

CRAWFORD et al. v. CARLISLE.

(4 Div. 878.)

(Supreme Court of Alabama. June 30, 1921. Rehearing Denied July 15, 1921.)

1. **Courts ☞485—Estate may be removed from probate court to court of equity for construction of will.**

On due application the administration of an estate may be removed from the probate court to a court of equity for construction of a will and for administration of the estate in the latter court.

2. **Wills ☞702—Bill showing complainant had no interest in the estate or was not an heir or distributee demurrable.**

If the averments of a bill to construe a will show that complainant has no interest in or is not an heir or distributee of the estate, a demurrer for such reason should be sustained.

3. **Courts ☞487(2)—Person interested held competent to maintain suit to remove administration from probate court to court of equity.**

Under Gen. Acts 1915, p. 738, a suit to remove the administration of an estate from probate to a court of equity for construction of a will may be maintained by an executor, administrator cum testamento annexo, or by a testamentary or other guardian or trustee, qualified and acting, or by any person, heir, devisee, legatee, or distributee having a pecuniary or representative interest in the questions involved and the property of the decedent.

4. **Wills ☞481—Will speaks from testator's death.**

A will speaks from the death of testator.

5. **Wills ☞866—If no effectual disposition is made by will, residue is governed by statute.**

If no effectual disposition is made by will, the residue of personal property goes to the residuary legatee, or, if there is none, to the next of kin under the statute of distribution, while real property so undisposed of descends to the heir at law.

6. **Wills ☞684(2)—Will construed to require that corpus of estate be kept intact except in providing for testator's wife.**

In a will which created a trust to pay testator's widow sufficient income for maintenance and directed distribution of the income of the estate after provision for the widow had been met, and which further directed the application, at the discretion of trustees, of the principal of the estate as well as the income and profits, to maintain the widow until she dies, subsequent directions in the will that the corpus of the estate should not be impaired must be construed as permitting the corpus of the estate to be used for the maintenance of the widow, if necessary; the limitation applying only to the surplus.

7. **Wills ☞524(1)—Will giving income to testator's four surviving children meant that children surviving each recurring dividend period had right to income.**

In a will which formed a trust estate, the income from which after maintaining the widow was for a term of years to be distributed to the four children of testator, reference to them as "my four surviving children," taken in connection with other references to his children in the will, shows that testator's intention was to bequeath the income remaining after meeting the needs of his wife to such of his children who might survive each recurring dividend period.

8. **Wills ☞523—Provision that income from trust estate shall be divided among grandchildren then in being held to be for class which may change.**

A provision in a will that the income from a trust estate for a period of 10 years shall be annually distributed to "my grandchildren then in being" is for a distribution to a class which may change.

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

9. Wills ⬿524(6)—Provision for division among grandchildren of an estate left to support widow of testator for life held to refer to those grandchildren who shared in a previous distribution.

Where a provision of a will was that a portion of the estate should be set off for the support of the widow, and that the income of a trust estate until the end of 1928 should go to the testator's children, and then for 10 years to his grandchildren in being, when the corpus was to be divided among grandchildren then in being, if the widow should survive the 10-year period, the part of the estate set off for her support should be divided at her death among the grandchildren in being at the end of the 10-year period, since the testator did not intend to create a new class for distribution.

10. Wills ⬿634(1)—"Vested and contingent estates" defined.

If futurity is annexed to the substance of a gift, it is "contingent"; if merely annexed thereto as the time of payment, enjoyment or delivery of possession, it is "vested."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Contingent Estate; Vested Estate.]

11. Wills ⬿634(14)—In devise of annual income for 10 years, and the corpus at the end of 10 years to grandchildren in being, futurity held to be annexed to the substance of the gift; "contingent remainder."

A devise of an annual income of a trust estate for a period of 10 years to grandchildren in being at each date of distribution and a devise of the corpus to grandchildren in being at the end of 10 years is a devise of a contingent estate, since futurity is annexed to the substance of the gift, which made the estate in remainder "contingent" under Code 1907, § 3401, defining a "contingent remainder" as one limited to an uncertain person or upon an event which may or may not happen.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Contingent Remainder.]

12. Perpetuities ⬿4(5)—Devise of income of trust estate to grandchildren in being at a stated time and of fee simple to grandchildren in being more than 20 years after death of testator held void.

A devise of an income of a trust estate after the widow's life estate to the testator's grandchildren in being at a stated time, some of whom could have been born more than 10 years after his death, and the devise of fee-simple estates and land to his grandchildren in being more than 20 years after his death, create contingent remainders as defined by Code, §§ 3400, 3401, and as such are void under Code 1907, § 3417, providing that conveyances to other than wife and children, or children only, cannot extend beyond three lives in being at the date of the conveyance and 10 years thereafter, and in view of sections 3410 and 3418.

13. Perpetuities ⬿4(1)—Excess of statutory authority as to duration of estates makes the provision in the will void ab initio.

An excess of statutory authority in a will as to duration of estates makes a provision void ab initio, since a court will not make a will for a testator and give present interest to a remote contingent estate.

14. Perpetuities ⬿7(1)—Bequest of personal property is governed by common law as to rule against perpetuities.

Since there is no statute controlling conveyances of personal property in respect to the creation of perpetuities, except Code 1907, § 3410, limiting trusts for accumulation merely, a bequest of personal property is governed by the common-law rule as to perpetuities, and, if it vests within lives in being and 21 years, it is valid.

McClellan, J., dissenting in part.

Appeal from Circuit Court, Houston County; H. A. Pearce, Judge.

Bill by Dorothy Carlisle, by next friend, against J. L. Crawford and R. D. Crawford, as executor, and others, to remove and administer the estate in the chancery court, to construe a will, and for other purposes. From the decree rendered, the respondents appeal. Affirmed.

The following is the will, leaving out preliminary matters:

"Item 2. I hereby appoint and make my two sons, J. L. Crawford and R. D. Crawford, my executors to carry out all the conditions, terms and stipulations of this my last will and testament and to do and perform all the duties enjoined upon them expressly or impliedly under the terms, conditions and stipulations of this my last will and testament; and my said executors, the said J. L. Crawford and the said R. D. Crawford, and each of them are hereby released from making any bond to carry out and perform the faithful discharge of their duties as executors under this my last will and testament; and when my said executors have probated this my last will and testament and had the same properly proved and recorded in the proper form, they shall not be held or required to make an annual or final settlement of their executorship or of their management and conduct of my said estate with any court.

"Item 3. It is my desire and I hereby direct, bequeath and advise, in case I should die before the death of my wife, Mrs. Mary A. Crawford, that my said executors shall from time to time and as long as she lives, set aside out of my estate or the profit or incomes arising therefrom, a sufficient amount to suitably and properly maintain and care for my said wife, Mary E. Crawford, for her comfortable support and maintenance; and the said amount to be so set aside for my said wife until she dies, out of my said estate or the profits and incomes of same, shall be determined by my said executors, they having due regard for the position and station in life that my said wife occupies.

"Item 4. After the bequest or provision for my said wife as set out in the preceding paragraph of this my last will and testament has been properly provided for and met by my said executors, I desire, direct, bequeath and devise that my said executors shall annually ascer-

tain and state the profits remaining after the provisions for my said wife has been met shall be equally divided, share and share alike among my surviving children, to wit, J. L. Crawford, R. D. Crawford, Elma Creel, and Ethel Wilson, but this division of profits and incomes does not refer to or affect the corpus of my estate, but only relates to such profits and incomes as may annually accrue to and grow out of my said estate, the corpus of my said estate remaining intact at all times and shall not be reduced or impaired.

"Item 5. I desire and direct that the corpus of my estate in its entirety as I shall leave the same at my decease shall remain intact without reduction or impairment, until the end of the year one thousand nine hundred and twenty-eight. My said four children, J. L. Crawford, R. D. Crawford, Elma Creel, and Ethel Wilson, shall enjoy, take, receive and have in equal parts share and share alike, all the incomes and profits accruing to and growing out of the corpus of my said estate; and the management, control and direction of the affairs of the corpus of my said estate shall be held and directed by my said executors, J. L. Crawford and R. D. Crawford, as in their judgment and sound discretion may be for the best interest of my said estate, my said executors at all times handling my said estate and directing its affairs for the benefit of my four surviving children until the end of said year one thousand nine hundred and twenty-eight, so far as the incomes and profits accruing to and growing out of same is concerned.

"Item 6. It is my desire and I direct that at the end of the said year one thousand nine hundred and twenty-eight the personal rights, titles and interest of my said four children, J. L. Crawford, R. D. Crawford, Elma Creel, and Ethel Wilson, shall cease and be determined and end in the corpus of my said estate, as I shall leave it at the time of my decease, and in the profits and incomes accruing thereto and growing out of same, and at the end of said year one thousand nine hundred and twenty-eight my said executors, J. L. Crawford and R. D. Crawford, shall continue to handle, control and direct the affairs of my said estate as my said executors herein created and the profits and incomes accruing and growing out of the corpus of my said estate shall be equally divided or distributed share and share alike to my grandchildren then in being per capita and not per stirpes, until the end of the year one thousand nine hundred and thirty-eight, provided, however, that Dorothy Carlisle shall not participate in such distribution and shall in no event receive any portion of my said estate as to corpus or the profits thereof, it being hereby stipulated and directed that the said Dorothy Carlisle, my grandchild, is hereby disinherited by me, in this, my last will and testament, and she shall not receive any part of my estate, either as to corpus or as to the profits accruing to or growing out of the same, it being hereby desired, directed, bequeathed and devised by me, in this my last will and testament, that my entire estate, both as to corpus and to profits and incomes accruing thereto and growing out of same, as herein set out, shall become the property of my said surviving children and my grandchildren to the exclusion of and without right, title or interest in the said Dorothy Carlisle.

"Item 7. It is my desire and will that, at all times and under all circumstances, my said estate as to its corpus shall remain intact without reduction and without impairment, until the end of the year one thousand nine hundred and thirty-eight, and at the end of each and every year after the year one thousand nine hundred and twenty-eight, and until the end of the year one thousand nine hundred and thirty-eight, my executors shall cast up and ascertain the amount of profits and incomes accruing to and growing out of the corpus of my estate, and the said profits and incomes at the end of each year after the year one thousand nine hundred and twenty-eight and until the end of the year one thousand nine hundred and thirty-eight shall be equally divided, share and share alike, among my grandchildren then in being, except Dorothy Carlisle, who shall not participate in, or take any part, of my said estate either as to its corpus, profits or incomes.

"Item 8. When all of the foregoing conditions, stipulations and provisions of this my last will and testament have been carried out, provided for and met, and at the end of the said year one thousand nine hundred and thirty-eight, it is my desire and I hereby grant, give, bequeath and devise all my property of every kind and description including my real, personal and mixed property then belonging to my said estate to my grandchildren then in being, except the said Dorothy Carlisle, share and share alike, and the said distribution and division of my said estate to my said grandchildren shall be per capita and not per stirpes, the term 'per capita' meaning herein that each of my grandchildren, except Dorothy Carlisle, shall take and receive of my estate an equal amount to each of the others of my grandchildren, except Dorothy Carlisle.

"Item 10. When all the foregoing terms, conditions and stipulations in this my last will and testament have been complied with, provided for and met by my said executors, and at the end of the year one thousand nine hundred and thirty-eight, it is my desire and I direct that my said executors shall then and there become, and they are hereby created trustees for my said grandchildren, except the said Dorothy Carlisle, and of my said estate; and as such trustees, they shall invest my said estate for my said grandchildren, except Dorothy Carlisle, into such investments and property as may, in their judgment and sound discretion, be proper and right to conserve and carry out the interests of my said grandchildren, except Dorothy Carlisle, and the said trustees shall make said investment in their own way, and as they may see proper so as to conserve the interests of my said estate and of my said grandchildren, except Dorothy Carlisle, in the same, to such an end that all my grandchildren, except Dorothy Carlisle, shall share equally in said investments, and to the end that each of my said grandchildren, except Dorothy Carlisle, shall take title in fee simple to equal shares of my said estate.

"Item 11. It is my desire and I hereby direct that in case the said J. L. Crawford or R. D. Crawford shall die, resign, or become incapacitated to perform the duties of executor under this instrument before the entire provisions, conditions, terms and stipulations have been carried out and met, then the surviving

or remaining executor shall appoint of his own order and without any court proceeding an associate or coexecutor, who shall act jointly with such surviving or remaining executor and carry out and perform all the duties herein imposed on my executors. In witness whereof I hereunto set my hand and seal, and publish and declare this to be my last will and testament on this the 27th day of September, 1917.

"J. R. Crawford. [L. S.]

"Signed, sealed, published, and declared by the above J. R. Crawford, as and for his last will and testament, in the presence of each of us, who, in his presence, and at his request and in the presence of each other have hereunto set our hands as witnesses.

"L. A. Farmer.
"C. W. Farmer.
"B. G. Farmer."

Farmer, Merrill & Farmer and J. J. Speight, all of Dothan, for appellants.

While the will makes provision for distribution of the incomes and profits of the estate, yet the title to all the property passed on the probate of the will. 109 Ala. 528, 20 South. 370. Vested interests such as were taken by the children of Mr. Crawford, are not subject to the rules of perpetuity. Section 3401, Code 1907; 199 Ala. 491, 74 South. 954; 202 Ala. 160, 79 South. 650. The devise of the income and profits is a devise of the estate itself. 188 Ala. 682, 66 South. 23; 201 Ala. 41, 77 South. 338; 92 Ala. 532, 9 South. 741.

Jerone Edmundson, of Birmingham, for appellee.

The complainant is the proper party. 40 Cyc. 1847. The attempted gift is void under the rules against perpetuity. 201 Ala. 248, 77 South. 838; 188 Ala. 682, 66 South. 23; 95 U. S. 303, 24 L. Ed. 450; 168 Ala. 505, 53 South. 244; section 3417, Code 1907; 181 Ala. 401, 61 South. 942. The intention to disinherit will not prevent complainant from taking her portion of the property which is not validly disposed of by the widow. 21 Ala. 205; 21 Ala. 406; 98 Ala. 426, 13 South. 744; sections 3754–3765, 6158, Code 1907.

THOMAS, J. The bill is by a minor granddaughter of testator for construction of the will of J. R. Crawford, who died April 9, 1918, and whose will, executed on September 27, 1917, was admitted to probate on June 10, 1918.

It is averred that some provisions in the will are of doubtful import; that the children and more than three grandchildren of the testator were living at the date of his death, one of whom is complainant; that testator died more than 10 years prior to the end of the year 1928, leaving both real and personal property sought to be charged, devised, and bequeathed by his will, respectively, to the widow for life, to children named for a term of years, and to the grandchildren not named therein who may be surviving at the respective periods indicated. The prayer of the bill was that a court of equity administer the estate, construe the will, require personal representatives to give bond, and for general relief.

Testator left surviving him a widow, Mrs. Mary A. Crawford, and the four children named in the will, who are alleged to be "his sole and only heirs except complainant [a grandchild of the testator], who is a daughter of Ruth Carlisle, a deceased child of testator." The mother of complainant died on September 8, 1913, and left as heir at law and next of kin the complainant and her husband, the next friend by whom the infant sues. Smith v. Yearwood, 197 Ala. 680, 73 South. 384.

[1] On due application administration of an estate may be removed from the probate court to a court of equity for construction of a will and for administration of the estate in the latter court. Gen. Acts 1915, p. 738; Fowlkes v. Clay, 88 South. 651;[1] Dent v. Foy, 204 Ala. 404, 85 South. 709; Jamison v. Brasher, 202 Ala. 578, 81 South. 80.

Omitting features of the will having no bearing, by item 2 thereof executors were nominated without bond or being required to make annual or final settlement of their executorship or management and control of the estate in any court. Item 3 provided that should testator die before his wife, Mrs. Mary A. Crawford (which was the fact), his executors should "set aside out of" said "estate or the profit or incomes arising therefrom, a sufficient amount to suitably and properly * * * care for" her "until she dies." Items 4 and 5 directed that said executors, in the management and control of the estate, after providing for the wife as indicated, should "annually * * * state the profits remaining," divide them "share and share alike among my surviving children, to wit, J. L. Crawford, R. D. Crawford, Elma Creel, and Ethel Wilson," and continue the annual division until "the end of the year one thousand nine hundred and twenty-eight." The executors were charged with "the management, control, and direction of the affairs of the corpus of" said estate "as in their judgment and sound discretion may be for the best interest of" said estate and for the benefit of the "four surviving children" until the end of the said year 1928, when, it is declared (item 6), "the personal rights, titles and interest of my said four children * * * shall cease and be determined and end in the corpus of" said estate "and in the profits and incomes accruing thereto, * * * and * * * said executors * * * shall continue to handle, control and direct the affairs of my said estate as * * * said executors, * * * and the profits and incomes accruing and growing

[1] 205 Ala. 523.

out of the corpus of * * * said estate shall be equally divided or distributed share and share alike to my grandchildren then in being per capita and not per stirpes, until the end of the year one thousand nine hundred and thirty-eight, provided, however, that Dorothy Carlisle shall not participate in such distribution and shall in no event receive any portion of my said estate either as to corpus or the profits thereof, * * * it being hereby desired, directed, bequeathed and devised * * * that my entire estate * * * as herein set out shall become the property of my surviving children and my grandchildren to the exclusion of and without right, title or interest in the said Dorothy Carlisle." Item 7: That "at all times * * * said estate as to its corpus shall remain intact * * * until the end of the year one thousand nine hundred and thirty-eight, and at the end of each and every year after the year one thousand nine hundred and twenty-eight, and until the end of the year one thousand nine hundred and thirty-eight, my executors shall * * * ascertain the amount of profits * * * of the corpus of my estate, and the said profits and incomes at the end of each year after the year one thousand nine hundred and twenty-eight and until the end of the year one thousand nine hundred and thirty-eight shall be equally divided, share and share alike, among my grandchildren then in being, except Dorothy Carlisle." Item 8: "When all the foregoing conditions, stipulations and provisions * * * have been carried out, provided for and met, and at the end of the said year one thousand nine hundred and thirty-eight, it is my desire and I hereby grant, give, bequeath and devise all my property of every kind and description including my real, personal and mixed property then belonging to my said estate to my grandchildren then in being, except * * * Dorothy Carlisle, share and share alike. * * *" There is no item 9 of the will exhibited by the pleading. It is further provided, in item 10, that after the foregoing stipulations have been complied with by the executors "at the end of the year one thousand nine hundred and thirty-eight * * * said executors shall then and there become, and they are hereby created, trustees for my said grandchildren, except the said Dorothy Carlisle, and of my said estate; and as such trustees, they shall invest my said estate for my said grandchildren, except Dorothy Carlisle, into such investments and property as may, in their judgment and sound discretion, be proper and right to conserve and carry out the interests of my said grandchildren, except Dorothy Carlisle, and the said trustees shall make said investment in their own way, and as they may see proper so as to conserve the interests of my said estate and of my said grandchildren, except Dorothy Carlisle, in the same, to such an end that all my grandchildren, except Dorothy Carlisle, shall share equally in said investments, and to the end that each of my said grandchildren, except Dorothy Carlisle, shall take title in fee simple to equal shares of my said estate." The last item of the will provided for a survivorship in the executorial office.

[2] Appellants insist that Dorothy Carlisle has no interest in the estate of J. R. Crawford, deceased, and may not prosecute the suit for removal of the estate and for construction of the will. If the averments of the bill show that complainant had no "interest in" or was not an heir or distributee of the estate of said decedent, demurrer challenging its sufficiency for such reason should have been sustained. The jurisdiction of courts of equity in respect to testamentary construction will not be exercised to determine hypothetical or abstract questions. In re Stumpenhousen's Estate, 108 Iowa, 555, 559, 79 N. W. 376; Pennington's Case, 70 Md. 418, 17 Atl. 329, 3 L. R. A. 816; Greeley v. Nashua, 62 N. H. 166; Little v. Thorne, 93 N. C. 69; Rothgeb v. Mauck, 35 Ohio St. 503.

[3] However, a suit for removal of the administration of an estate from the probate to a court of equity and for construction of a will may be maintained by an executor, administrator cum testamento annexo, or by a testamentary or other guardian or trustee, qualified and acting (Carroll v. Richardson, 87 Ala. 605, 6 South. 342; Fowlkes v. Clay, supra), or by any person, heir, devisee, legatee, or distributee, having a pecuniary or representative interest in the questions involved and in the property of decedent (Gen. Acts 1915, p. 738; Caldwell v. Caldwell, 204 Ala. 161, 85 South. 493; Gunter v. Townsend, 202 Ala. 160, 164, 79 South. 644; Nabors v. Woolsey, 174 Ala. 289, 56 South. 533; Wolffe v. Loeb, 98 Ala. 426, 431, 13 South. 744; Parker v. Parker, 99 Ala. 239, 243, 13 South. 520, 42 Am. St. Rep. 48; Gould v. Hayes, 19 Ala. 438; Denson v. Autrey's Ex'r. 21 Ala. 205; Otis v. Dargan, 53 Ala. 178, 186; Whorton v. Moragne, 62 Ala. 201, 209; 40 Cyc. 1848, 1849.

[4, 5] Whether complainant has an interest in the properties sought to be conveyed by the will depends upon an effectual devise or bequest. A will speaks from the death of the testator (Blakeney v. Du Bose, 167 Ala. 627, 52 South. 746), and, when an effectual disposition is not made by will, the residue is governed by statute; if personal property, it goes to the residuary legatee, or, if there is none, to the next of kin, under the statute of distribution; while real property, so undisposed of, descends to the heir at law (Johnson v. Holifield, 82 Ala. 123, 2 South. 753; Caldwell v. Caldwell, supra; Pearce v. Pearce, 199 Ala. 491, 74 South. 952; Trustees of Cumberland University v. Caldwell, 203 Ala. 590, 84 South. 846; Denson v. Autrey's Ex'r, su-

pra; Chighizola v. Le Baron, 21 Ala. 406, 411). There is no residuary clause in this will. If testator's real properties were undisposed of by his will, together with the incomes and profits arising from that real property, they descended to testator's heirs, one being complainant, who took a .child's part as the heir at law and next of kin as the only lineal descendant of her deceased mother.

[6] The first provision of the will created a trust to pay testator's widow a sufficient income for her maintenance (item 3), and payment thereof to be made each year, for it is required of the trustees that they annually ascertain and distribute the amount left of the income after the provision for the "wife has been met" (item 4). In the maintenance of the widow the trustees are directed, at their discretion, to apply the principal of the estate as well as the incomes and profits "until she dies" (item 3). In items 4, 5, and 7 are statements that the corpus be not impaired; yet these statements are reconcilable with the requirements of items 3 and 4. In items 5, 6, and 7 testator's reference to the corpus is solely as it relates to the trust created for surviving children to and including the year 1928, and to the trust sought to be created for grandchildren (except Dorothy Carlisle) from the end of the year 1928 to the year 1938, inclusive; that is to say, it was only in the distribution of surplus income to children and grandchildren that the testator emphasized the fact and expressed the desire that the corpus of his estate be kept intact. His meaning is clear; the "corpus" of the estate must be kept intact after the "bequest or provision" for the wife (in items 3 and 4) "has been met" (item 4).

[7] The use of the words "surviving children" in items 4 and 5, when considered with the other provisions of the will, shows that testator's intention was to bequeath the income remaining after meeting the needs of his wife to such of his children who survive each recurring dividend period, from the date of his death to and including the year 1928. The estate or property interest in surplus income for years thus created by giving to the surviving children such remaining annual profits terminated at the end of the year 1928. Thereafter the interest of testator's children in the estate ceases, and the remaining annual income (after the life estate or interest of the widow is met) is required to be equally distributed among testator's "grandchildren then in being per capita," except Dorothy Carlisle, from the year 1929 to 1938, inclusive.

[8] Items 6 and 7 show that this gift of remaining income to grandchildren (that after the widow's interest is deducted) is not like the gift to children, specific persons, but to a class which may change by reason of natural causes from year to year. And it is required that at the "end of each and every year" (item 7) the trustees shall ascertain the income and divide it among "grandchildren then in being." "At the end of the said year" (1938), and only after all the conditions and provisions of the will had "been carried out," it was declared that testator granted, gave, bequeathed, and devised all of his property "then belonging" to his estate to his "grandchildren then in being," except Dorothy Carlisle (item 8). This direction is likewise subject to the widow's needs if she is still living. The trustees are required to see that the estate is properly invested (item 10) and to divide the estate, or part thereof, not employed for the widow's support, among the grandchildren in being (except Dorothy Carlisle) at the end of the year 1938, and then only did it vest in such persons in fee simple.

[9] If the widow is still living at the end of the year 1938, a further division among grandchildren will be necessary and required after her death of that part of the estate which has been retained and charged with the annual support of the widow. It is plain that such grandchildren are the same as those who in 1938 participated in the first distribution of the corpus of the estate; that is, there is no intention to establish, in items 9 and 10 a different class of grandchildren for a second distribution of any part of the estate retained by the trustees after the year 1938 for the support of the widow, as was done relative to surviving children and different classes of grandchildren in items 6 and 7, in dealing with the surplus income. See Hill v. Chapman, 1 Ves. Jr., 405; s. c. 3 Brown, Ch. Rep., 391; Andrews v. Partington, 3 Brown, Ch. Rep. 401, 404; Warren's Estates and Future Interests, Harvard Law Review (April, 1921) p. 639.

The nature of the interest or estate sought to be devised and bequeathed to testator's grandchildren (except Dorothy Carlisle), subject to the primary maintenance of testator's widow for life, and the estate for years in surviving children of surplus income, being understood, the legal effect of testator's provision for the disposition of the ultimate estate or property in grandchildren must be determined as estates which the rule against perpetuities touches. Gray, The Rule against Perpetuities (2d Ed.) § 110a, p. 83.

[10] Speaking generally of vested and contingent estates, if futurity is annexed to the substance of a gift, it is "contingent;" if merely annexed thereto as the time of payment, enjoyment or delivery of possession, it is "vested." Gunter v. Townsend, supra; Pearce v. Pearce, supra; Montgomery v. Wilson, 189 Ala. 209, 66 South. 503; Crawford v. Engram, 153 Ala. 420, 45 South. 584; Johnson v. Terry, 139 Ala. 614, 36 South. 775; Andrews v. Russell, 127 Ala. 195, 28 South. 703; Wynne v. Walthall, 37 Ala. 37; High's Adm'r v. Worley's Adm'x, 32 Ala. 709; Marr

v. McCullough, 6 Port. 507; Gregg v. Bethea, 6 Port. 9; McLemore v. McLemore, 8 Ala. 687: McLeod v. McDonnel, 6 Ala. 236.

[11] Of the devises or bequests to grandchildren in being at the several periods of distribution of surplus income, or that of vesting the fee at the time fixed by Mr. Crawford's will, futurity was annexed to the substance of the gift. Warren's Estates and Future Interests, Harvard Law Review (March, 1921) p. 510. The condition precedent to the right of participation in an annual distribution of profits is that the children or grandchildren (except Dorothy) be in life not only during the period of and on the termination of the estate for years created for testator's surviving children, but thereafter at such recurring annual dividend period. The condition precedent to grandchildren (except Dorothy) taking the ultimate estate is the being in life "at the end of the year one thousand nine hundred and thirty-eight," and "when all the foregoing conditions, stipulations and provisions" of the will have been carried out, provided for and met by the executors, then the estate is granted, given, bequeathed and devised. (Item 8 of will.)

Such grandchildren designated to take the corpus of the estate may be entirely different individuals than those composing the class at the date of testator's death, since all of the grandchildren in life at the date of his death may be dead and the class of grandchildren represented at the end of the year 1928 and successive years to the end of the year 1938 may be only after-born grandchildren. This is a probable result of such a devise to "grandchildren then in being" in December, 1928, or at the end of the year 1938, or at intermediate annual distribution periods during the 10 years before final vesture of the corpus of the estate. Such an interest or estate as the rule against perpetuities touches we shall show (Kountz's Estate, 213 Pa. 390, 398, 399, 62 Atl. 1103, 3 L. R. A. [N. S.] 639, 5 Ann. Cas. 427) is contingent and conditional in that the grandchildren living at the date of testator's death may not be of the grandchildren living at the dates of the annual distribution periods, or at the period fixed for the final vesture of the estate; that is, may not reach the age made a condition annexed to and precedent to the devise, the vesture of the estate. Illustrating this, we may inquire: If the possession becomes vacant by the death of the several tenants for years— "surviving children"—before the end of 1928, and by the death of the life tenant before the end of 1938, which of the grandchildren would take the corpus of the estate? The failure of answer by testator's will at the date of his death indicates the uncertainty of the right of enjoyment at the period or periods of futurity made conditions precedent to the gift or devise; for the general rule requires not only that an estate be vested and

206 ALA.—25

that there be a capacity of taking effect in possession, if the possession were to become vacant, but that there be present ascertainment of the person who is designated to take when the possession does become vacant. If there be not only the uncertainty of the future enjoyment (which is incident to all remainders), but also uncertainty throughout the period of the precedent estate as to who has the right to such future enjoyment, the estate in remainder is contingent. Code, § 3401; Smaw v. Young, 109 Ala. 528, 538–539, 20 South. 370; Lyons v. Bradley, 168 Ala. 505, 513, 53 South. 244; Gray, §§ 110a, 205a, 205b, 369; Marsden's Perpetuities and Accumulations, pp. 207, 226, 228; Kountz's Estate, supra; Edgerly v. Barker, 66 N. H. 434, 31 Atl. 900, 28 L. R. A. 328; 1 Tiffany, Real Prop. (2d Ed.) p. 601, § 182; Southern v. Walloston, 16 Beav. 276. If to a class which includes persons who might not be ascertained until after a life in being and 21 years afterwards, it is, void under the rule that a gift to a class is void unless the whole class be ascertainable within the period allowed by the rule, was the announcement of New Jersey and Rhode Island courts. Rhode Island, etc., Co. v. Peck, 40 R. I. 519, 101 Atl. 430; Siedler v. Syms, 56 N. J. Eq. 275, 38 Atl. 424.

The fundamental difference that must be remembered in considering testator's devise and bequest to the "grandchildren then in being" on respective dates indicated is that of a gift in remainder to such of several named persons "as may be living" at the termination of a given trust or limited estate and a gift to persons named or "as many as may be living" at the time indicated. The former is regarded as a gift to persons whose identities are left to future ascertainment, individually or by representative of the group; and, being uncertain in speaking as of the future, the gift does not vest pending the continuance of the given trust or limited estate. The latter is a gift of present operation to persons then in existence, while the alternative gift is dependent upon future contingencies which may arise during the continuance of the intervening estates, and this is provided for only in a substitutionary way. White v. Smith, 87 Conn. 666, 672, 89 Atl. 272, L. R. A. 1917D, 596. Such last-named estates, in point of interest or right, are vested at the death of the testator, subject to be divested as one or more of the then existing legatees or devisees may die in favor of those who survive the life tenant or tenant for the intervening estate. Marsden's Perp. & Accum. p. 207.

From the date of testator's death to that on which his estate will finally vest in grandchildren in being is a period of 20 years 8 months and 22 days; during which time a posthumous child, if born to testator's wife, Mrs. Mary A. Crawford, may become more than twenty years of age by December, 1938,

and the life tenant may have died before said date. With this statement of the nature of the estate sought to be created by testator for his grandchildren (except Dorothy Carlisle), it is necessary that we further consider the nature of contingent estates that are subject to the rule against perpetuities. In the Code of 1907 appeared a legislative definition of vested and contingent remainders which established Judge McClellan's views expressed in Smaw v. Young, supra, as the law; such views being in line with the rule of the common law on the subject. Lyons v. Bradley, supra. Section 3400 of the Code defines an estate in remainder as:

"One limited to be enjoyed after another estate is determined, or at a time specified in the future. An estate in reversion is the residue of an estate usually the fee left in the grantor and his heirs after the determination of a particular estate which he has granted out of it."

Section 3401: That remainders, either vested or contingent, are as follows:

"A vested remainder is one limited to a certain person at a certain time, or upon the happening of a necessary event. A contingent remainder is one limited to an uncertain person, or upon an event which may or may not happen." Pearce v. Pearce, supra; Gunter v. Townsend, supra.

Was the estate in "grandchildren then in being" at the end of the stated time sought to be created by Mr. Crawford's will contingent or vested as the rule against perpetuities touches? The rule is one of convenience that came from construction of the will of Peter Thellusson, who, dying in 1797 (5 M. A. L. §§ 240, 352), devised his property to trustees and their heirs to accumulate the income during the lives of all of his sons, A., B., and C., and of his grandson D., and such other sons as A. then had or might have, and of such issue as D. might have, and of such issue as any other sons of A., B., and C. might have, and grandsons' children who were living at his death, and then, at the death of the survivor, that the property be divided into three lots, and conveyed to the then living eldest male lineal descendant of his three sons, with remainder to the second, etc., which devises was upheld by the courts (Thellusson v. Woodford, 4 Ves. 227; s. c. [1805] 11 Ves. 112, 116, 119; Gray, §§ 216, 217), and led to the passing in 1800 of Stat. 39 & 40 Geo. III, c. 98, known as the Thellusson Act (or Lord Loughborough's Act; see Edwards v. Tuck, 3 De G., M. & G. 40, 55), which is contained in Mr. Gray's work, pp. 514, 515; Marsden's Perp. & Accum. p. 322; Pells v. Brown, Croke's Rep. temp. James, 590; 5 M. A. L. § 237.

In Mr. Marsden's Perpetuities and Accumulation, p. 223, it is said:

"Where there is a gift to a class to be ascertained at a future time, a gift of the income, as a common fund, for the benefit of all the contingent members of the class for the time being, until the ascertainment of the class, does not vest the corpus. This was the case in Re Hunter's Trusts, L. R. 1 Eq. 295, Re Crimshaw's Trusts, 11 Ch. D. 406, 48 L. J. Ch. 399, and in Lloyd v. Lloyd, 3 K. & J. 20."

And:

"A gift to a class of competent objects fails for remoteness if the shares are not to vest before the members of the class attain an age which as to some of them may be too remote. And this is the case, not only where the gift is to such of the class as attain the specified age, but also where it is, in the first instance, to the class absolutely, and there follows a separate clause directing shares to vest at the given age. * * * And, generally, a gift to the children or other issue of a living person, or to any class which may include an unborn person, is void for remoteness, if the vesting of shares is postponed to an age beyond 21." Pages 98, 99.

The rule is concisely stated by Mr. Gray:

"No interest is good unless it must vest, if at all, not later than 21 years after some life in being at the creation of the interest." Section 201 et seq.; Marsden's Perp. & Accum. p. 1; 1 Tiffany, Real Prop. p. 591; 49 Am. St. Rep. 117, and authorities; 5 M. A. L. § 236.

To these requirements and as corollaries thereto the courts have added certain other requirements to which the rule applies: (1) To legal and equitable contingent interests in both realty and personalty (Marsden, p. 166; 49 Am. St. Rep. 126, 127, 129; 5 M. A. L. 263; 1 Tiffany, p. 606); and (2) not to vested interests. This last statement is subject to the qualification that, when a future estate or interest in property is given to a class, and such estate or interest is vested in certain members of the class subject to open and let in other members born afterwards, or afterwards fulfilling a condition (Duncan v. De Yampert, 182 Ala. 528, 62 South. 673), the shares in such remainder or interest will be obnoxious to the rule against perpetuities if their number, and therefore their size, may not be determinable until too remote a period (Gray, §§ 205a, 369; 49 Am. St. Rep. 121; 5 M. A. L. § 260; 1 Tiffany, p. 595; 21 R. C. L. 307; 21 Eng. Rul. Cas. 131. (3) Since the contingencies on which future estates may be conditioned must happen, if at all, within the required time. If the contingent event "can possibly happen beyond those limits, an interest conditioned on it is too remote." Gray, §§ 214, 374; 49 Am. St. Rep. 119, 129; 5 M. A. L. §§ 236, 251; Ould v. Hospital, 95 U. S. 303, 24 L. Ed. 450; 1 Tiffany, p. 595, § 180, and notes; 2 Underhill on Wills, § 554, and note. (4) The contingency may be postponed for any number of human lives (in this state three lives in being and 10 years thereafter [Code, § 3417]), provided they are all in being when the contingent interest is created.

The persons whose lives are taken need have no interest in the estate; and a child en ventre sa mère is to be considered as born when it will be for its benefit to be so considered, but not for the benefit of third persons. Pearce v. Pearce, supra; 49 Am. St. Rep. 122; Gray, § 220; 5 M. A. L. pp. 186, 188, 189. (5) That the term of years (under the English rule 21 years, and 9 months when interest of such minor is involved) may be taken in gross without reference to any infancy (Marsden, pp. 207, 213, 214; Gray, § 223) was settled in Cadell v. Palmer, 10 Bing. 140, 1 Cl. & Fin. 372, 21 Eng. Rul. Cas. 100, 126, 132; Marsden, p. 207), and has not been questioned in America (Barnitz's Lessee v. Casey, 7 Cranch, 456, 469, [11 U. S.] 3 L. Ed. 403; McArthur v. Scott, 113 U. S. 340, 5 Sup. Ct. 652, 28 L. Ed. 1015, 1027, 1028; 21 R. C. L. 293 [15]; Pearce v. Pearce, supra; Lyons v. Bradley, supra, 168 Ala. 512, 53 South. 244; Ashurst v. Ashurst, 181 Ala. 401, 61 South. 942; 5 M. A. L. § 243). The interesting observation is made that the suit of Bengough v. Edridge, 1 Sim. 173, better known to students by the name of the appellate case Cadell v. Palmer, is identified, in the traditions of the Chancery Bar, with the suit of Jarndice v. Jarndice in Dickens' well-known, unexaggerated description of the procedure of the old Court of Chancery. 21 Eng. Rul. Cas. 129. The number of years allowed in gross by the statute in this jurisdiction is not more than 10 years (Code, § 3417); leasehold estates are limited to 20 years (Code, § 3418); and trusts for accumulation merely may not be for more than 10 years or during minority (Code, § 3410). (6) No limitation of a present life estate or of a present term of not more than the number of years indicated in the rule or statutes can be bad for remoteness. Gray, § 225; 5 M. A. L. § 242; Marsden, 24, 25, 193. (7) The question of remoteness is to be determined from the date of the delivery of the conveyance, or, in a will, from the time of testator's death, and not from the date of his will. Gray, § 231; 5 M. A. L. § 243; 49 Am. St. Rep. 119; Caldwell v. Caldwell, 204 Ala. 161, 85 South. 493; Pearce v. Pearce, supra. (8) And the interest must begin within the required limits and may extend beyond. 1 Tiffany, §§ 179, 180; Gray, § 232; Proctor v. Bishop of Bath, 2 H. Bl. 358; Abbiss v. Burney, 17 Ch. Div. 211. (9) And a perpetuity will not be tolerated when covered by a private trust (Duke of Norfolk v. Howard, 1 Vernon, 162; 1 Perry on Trusts, § 382; Moseley v. Smiley, 171 Ala. 593, 55 South. 143; Lyons v. Bradley, supra); but where the gift is to one charity and then on contingency to another, the validity of second interests has been dealt with as an exception to the rule (Warren, H. L. R., April, 1921, p. 645; Gray [3d Ed.] § 597; Perry on Trusts, § 734). (10) That the right of entry for condition broken is not within the rule against perpetuities. Warren, H. L. R., April, 1921, p. 648; Kales, Future Interests (2d Ed.) § 662; Gray (3d Ed.) § 302.

From the foregoing rule and corollaries thereof it will be noted that a limitation to be valid (under the common-law rule) and the vesting of the estate certain—the limitation and vesting—must not occur later than a life or lives in being and 21 years thereafter; under our statute not later than 10 years thereafter. If the time for the vesting is not measured by lives, but merely by a definite number of years, it is necessary that the limitation not extend beyond the 21 years under the common law, and under our statute 10 years. Kountz's Estate, supra; Andrews v. Lincoln, 95 Me. 541, 50 Atl. 898, 56 L. R. A. 103; Rolfe v. Lefebre, 69 N. H. 238, 45 Atl. 1087; Woodall v. Bruen, 76 W. Va. 193, 85 S. E. 170; Palmer v. Holford (Eng.) 4 Rass. 403; Davis v. Williams, 85 Tenn. 646, 4 S. W. 8; Reid v. Voorhees, 216 Ill. 236, 241, 74 N. E. 804, 3 Ann. Cas. 946; Quinlan v. Wickman, 233 Ill. 39, 46, 84 N. E. 38, 17 L. R. A. (N. S.) 216. See, also, Leake, Prop. in Land, 441; Marsden, 34; Jarman on Wills (5th Ed.) 491.

Mr. Underhill says that, where a gift is simply to the children of the testator, or to the children of A., and it is not preceded by a prior life estate, but is stated in general terms to be payable when the beneficiaries attain 21 years of age, such children only will take who are in being at the death of the testator, or who come into existence before the eldest child who is also living at the death of the testator shall attain 21 years of age, etc.; that a distinction should be made between a gift to be paid when such beneficiaries attain majority or marry and a gift "to children as individuals or as a class if they reach majority or marry, with a gift over in case they do not. The former is a vested devise descendible and devisable; the latter is a mere contingent executory gift. A legacy to the children of A., to be paid as they severally attain the age of 21, vests at the death of the testator in the children of A. then living, and in all his afterborn children as soon as they are born. Parker v. Leach, 66 N. H. 416, 31 Atl. 19. Where the devise to the children whom A., the parent, may leave, is to go over in case none of them shall reach 21, and in case none shall leave issue which shall attain that age, the children whom A. leaves him surviving take a contingent interest, which becomes vested only on each reaching his majority." 2 Underhill on Wills, § 554, and note.

On the assigning of estates in remainder to a class; as to children or grandchildren, it is noted that the members may be increased between the time the remainder is created and the termination of the particular estate, as a devise to A. for life with remainder to his children and their heirs as

tenants in common. Each child born or its heir will have a share in the estate that will diminish by the birth of every other child of A. And, speaking generally, remainders as such are said to be open to let in after-born children. This is aside from the relation of such estates to the rule against perpetuities. Such was the case of Duncan v. DeYampert, 182 Ala. 528, 62 South. 673, where no question of the application of the rule against perpetuities was for consideration, but only the distinction between vested and contingent remainders as affecting a class of after-born children within the provisions of the will. This class of remainders as the rule against perpetuities touches may not always be placed under the head of or in the class of vested remainders. For there may be remainder that is vested only in so far as it is certain that whenever and however the preceding estate determines there will be one or more persons who will come into possession thereof, "but in so far as it is not certain what the number of those persons will be, or, in other words as the number and consequent size of the shares," it is contingent; and such remainder cannot be said to be vested as respects the rule against perpetuities. The imperfect character of the vesting in such class or classes is illustrated by Mr. Gray, and, as he said, is brought out by the application of the rule that interests or estates in all respects vested "never come within the rule, but when there is a gift in remainder to a class which has become vested in a living person, if the number of persons who will finally constitute the class may not be determined until a remote period, the remainder is void. For instance, suppose a devise to A. for life, remainder to his eldest son (unborn) for life, remainder to the grandchildren of B. B. is living and has had one grandchild, C., born to him. C. is said to have a vested remainder, but as the number of the grandchildren in whom the remainder is ultimately to vest in possession, and consequently the size of the shares, cannot be determined till too remote a period, the whole devise to the grandchildren is invalid as too remote. This is apparently an exception to the rule that vested interests are never too remote, but in truth remainders of this sort, although called vested, are not really so; at a certain point, and on the point which the rule against perpetuities touches, they are, in fact, contingent." Sections 110a, 205a, 205b. ·

This exception, also recognized by Mr. Tiffany (volume 1, p. 499, § 139), placing some estates called vested within the class of contingent estates, as touching the rule against perpetuities, is stated by Mr. Gray as follows:

"There is often a gift to a class of persons, for example, to the grandchildren of a testator, upon a contingency which may happen beyond the limits of the rule against perpetuities; as, for instance, a bequest of money to be divided among those of the testator's grandchildren who reach 25. Such a gift is bad, although the testator has grandchildren living at his death. Edgerly v. Barker, 66 N. H. 434; section 398b and App. (G), § 857 et seq. For although, if the living grandchildren reach 25, they must do so during lives in being at the testator's death, namely, their own lives; yet, as they may all die before reaching 25, the class may ultimately be composed of grandchildren not born at the testator's death, and the bequest may therefore vest more than 21 years after the end of all lives then in being." Section 369, p. 314.

"The usual case of a gift to a class which violates the rule against perpetuities is that of a devise to such of the grandchildren (or of the children of some living person) as reach an age over 21, say, 25; and this will serve as a typical case. The first point to consider is whether the devise is to vest at 25, or whether it vests at the death of the parent (or other period not too remote), subject to be divested if a devisee dies under 25. In the former case the devise is bad; in the latter the devise is good, and the divesting gift over bad. Section 100 et seq.; section 209; Re Bevan's Trusts, 34 Ch. D. 716; 1 Jarm. Wills (5th Ed.) c. 25: Theob. Wills (5th Ed.) c. 35; Hawkins on Wills, c. 18; Marsden, Perp. c. 11." Section 372. See sections 110a, 120, 121, 205a, 205b, 638.

"Assuming, then, that the devise is not to vest until the remote period, the devise to the whole class is bad; and it is immaterial that some persons are in esse who, should they reach 25, would be entitled to share, for none of them may reach 25, and the whole class may ultimately be composed of persons who are not born at the testator's death. This seems to have been first ruled by Lord Kenyon in Jee v. Audley (1787) 1 Cox, 324; but the most important case is Leake v. Robinson (1817) 2 Mer. 363, 388, et seq., in which Sir William Grant, M. R., held that the whole gift was void, and so the law has stood ever since." Section 373.

So the rule is stated in 5 M. A. L. §§ 275, 277, 278.

In 1 Tiffany, § 120, pp. 595, 596, 597, the rule is applied to grandchildren thus:

"The statement frequently made that a devise to such grandchildren of testator as attain an age greater than 21 is invalid (Leake, Prop. in Land, 444; Gray, Perpetuities, § 374; Marsden, Perpetuities, 87; 30 Cyclopedia Law & Proc. 1488) is properly, it is conceived, subject to an exception in case he leaves no children and no widow. In that case all his grandchildren are necessarily born at the time of his death, and if they ever attain the age named they must do so within their own lives, lives in being. But, although he leaves no children, nevertheless if he leaves a widow, there is a possibility, not legally open to question (Platt v. Powles, 2 Mau. & Sel. 65), that there may be a posthumous child, and a child of such posthumous child might attain the age named more than 21 years after any life in being which can be pointed out at the time of testator's death. [See our case of Sims v. Birden, 197 Ala. 690, 73 South. 379, 744]. * * *

"A gift to such children of a living person as may be living at a time too remote under the rule is void, though the age of such person is such that it is morally certain that there will be no such children who are not living at the time of the testator's death. Jee v. Audley, 1 Cox, 324; In re Dawson, 39 Ch. Di. 155; Stout v. Stout, 44 N. J. Eq. 479, 15 Atl. 843; Flora v. Anderson (C. C.) 67 Fed. 182; Rand v. Smith, 153 Ky. 516, 155 S. W. 1134."

See, also, Jarman on Wills, vol. 1 (6th Ed.) p. 257.

[12] Under the foregoing rules, the nature of the interest or estate sought to be devised to testator's "grandchildren then in being" at the end of the years 1928 and 1938 and after is contingent rather than vested, and it is necessary to declare whether such devises are "too remote" or offensive to the rule against perpetuities. It is provided by statute that the owner of lands may convey them on such terms as he thinks proper "within the limits fixed by law, so as to avoid perpetuities," and subject to such other restrictions as are imposed by law. Code, § 3416; Pearce v. Pearce, supra; Manfredo v. Manfredo, 191 Ala. 322, 326, 68 South. 157; Montgomery v. Wilson, 189 Ala. 209, 66 South. 503. The rule against perpetuities and the time for which lands may be conveyed to certain persons is thus stated:

"Lands may be conveyed to the wife and children, or children only, severally, successively, and jointly; and to the heirs of the body of the survivor, if they come of age, and in default thereof, over; but conveyances to other than the wife and children, or children only, cannot extend beyond three lives in being at the date of the conveyance, and ten years thereafter." Code, § 3417.

This statute was interpreted in Lyons v. Bradley, 168 Ala. 505, 53 South. 244, where a trust for grandchildren was sought to be established in gross for 25 years; Farr v. Perkins, 173 Ala. 500, 55 South. 923, where the conveyance was to wife and children; in Ashurst v. Ashurst, 181 Ala. 401, 61 South. 942, where the devise was to the children and on their death during the term of years to the grandchildren of testator; and in Montgomery v. Wilson, 189 Ala. 209, 66 South. 503; and Pearce v. Pearce, supra, where the devises were to grandchildren. That conveyances seeking to entail real property (not leases or trusts for accumulation merely) may not offend the statutory rule against perpetuities, the extent or nature of the limitations on such estates to "other than the wife and children, or children only," may be signified: (1) By such as must vest the estate by human lives in being, not to exceed three, at the date of the delivery of the conveyance or the death of the testator; (2) by three human lives in being at the date of the delivery of the conveyance or the death of the testator, and 10 years thereaft-er; (3) by years in gross from the date of the delivery of the conveyance or the death of the testator, not to exceed 10 years thereafter. The inadvertent or contrary expression in Pearce's Case, supra, 199 Ala. 505 (12) 74 South. 958, "the date of the execution of the will," is overruled. Caldwell v. Caldwell, supra.

The provision of the statute for a conveyance of lands to a wife and children, and to children successively, was applied in Farr v. Perkins, supra, and Smith v. Davis, 199 Ala. 687, 75 South. 22. The provisions for limitations of estates "to other than the wife and children" were applied in Lyons v. Bradley, supra, 168 Ala. 514, 515, 53 South. 244, 247, where the observation was made that it is immaterial whether the ultimate estate created was contingent or vested, under the rule announced in Smaw v. Young, 109 Ala. 528, 20 South. 370; that in the will (of Mr. Lyons) the provisions sought to be made for testator's grandchildren through a trustee were void; that in the case of such vested estates (subject to be divested) the devises are such as that the estates sought to be created are "liable to become divested by the death of the remaindermen before the expiration of the period of 25 years, or the class may be enlarged by the birth of others, so that during the term no person nor any number of persons can be said to have the right to convey indefeasible estate in the lands," and therefore it offended the statute for remoteness. It is then observed that—

"The courts in applying the rules against perpetuities regard all limitations as void ab initio which are not so framed as to take effect of necessity within the legal period, if at all. * * * The devise to grandchildren in this case is not to them nominatim, but to them as a class surviving their immediate ancestors and the term for years. That contingency may happen beyond the limits of the rule, or it may not happen at all. Such a gift is bad although the testator has grandchildren living at his death."

After quoting section 373 from Mr. Gray's Perpetuities, the discussion of the statutory rule applicable to the provision of the Lyons will was continued, the court saying:

"The necessarily deducible purpose of the testator is that the ulterior estates shall not be determined short of 25 years, though the widow may die before that time. To establish a contingency in which the limitations shall take effect at a time short of 25 years would require the making of a will for the testator, and this, of course, the court cannot undertake. Nor can the ulterior estates be saved by the fact that they are limited upon the life of the widow in the event she survives the term of 25 years. True, this is in a sense an alternative limitation upon an estate for life, but the alternative here is not absolute. It is to become operative only in the event the widow survives the term of 25 years, thus rendering all limitations over contingent and affected by

the rule for the reason that the term of years must intervene. The limitations over as determined by the life of the widow are also void. * * * On considerations heretofore stated, the ulterior estates are void." 168 Ala. 515, 516, 53 South. 244, 248.

In Mr. Lyons' will the term in gross was 25 years; in the Crawford will the term in gross is 20 years 8 months and 22 days.

In Ashurst v. Ashurst, supra, the will considered was sought to vest in each of his three sons an interest in one-sixth of his lands (under certain conditions to their children) for a term of 25 years, and declares that these beneficiaries shall enjoy it for such time. Thereafter it was directed to be sold, subject to a previous estate limited therein, the certain lands devised to each of three sons "for their several lives respectively, and on their several deaths within twenty-five years after" his death to their several children, or, if there were no children, to the surviving donees until the expiration of 25 years. Held void, notwithstanding the recital that it was testator's "purpose * * * to vest an interest in the remainder subject to the previous life estates," since the will "created no previous life estates, but devised to the sons and their children a term of twenty-five years, which could not be done under the provisions of section 1030, Code 1896." Code 1907, § 3417. It is observed:

"If Mr. Ashurst had the power to so fetter the lands, to which we have above referred, for a period of 25 years, he had the power to prevent their sale for a much longer period, and to so hold would be, in effect, to strike the above-quoted statute against perpetuities from our Code. The Legislature has seen fit to declare that the measure of the period during which the right to alienate lands may be suspended shall be determined by human lives, and the provisions of this will are clearly offensive to the above-quoted provision of our Code." 181 Ala. 406, 61 South. 943.

The cases of Pearce v. Pearce, supra, and Montgomery v. Wilson, supra, are in conformity to this view.

We have noted that the attempted devise—of testator's real properties and the balance of the profits arising therefrom to his grandchildren—is not to the grandchildren living at testator's death; it is to grandchildren living more than 10 years after his death. The grandchildren, or some of them, living at his death may never be entitled, or have the right, to take even the income under the provisions of the will, much less the corpus of the real estate. They may all die in the next 10 years, and the class which takes the first gift of income may be composed of grandchildren who may not be born within 10 years of the death of the testator. And so of the fee. The attempted devise of the lands in fee to "grandchildren then in being" (at the end of the year 1938) is contrary to the provisions of Code, § 3417, in that it established a contingency, or imposed a limitation, which may take effect and vest the fee beyond the statutory period. To establish such a limitation short of the time fixed by the testator would require the making of a will which he did not make and which the court may not do for him.

[13] The legal effect of an excess of statutory authority in a will as to duration of estates is different from that of leasehold estates. In the former the provision is void ab initio, for the stated reason that a court may not make a will for a testator and give present interest to a remote contingent estate; in the latter a court may enforce the contract of the parties (into which the law entered and became a part) for a present interest to the extent of the statutory period, since this is not restrained by negative limitation within the statute providing for leasehold estates. Robertson v. Hayes, 83 Ala. 290, 3 South. 674; Mobile Elec. Co. v. City of Mobile, 201 Ala. 607, 79 South. 39, L. R. A. 1918F, 667; Gray, § 874 et seq.; Campbell v. Leach, Amb. 740. 745; Root v. Stuyvesant, 18 Wend. (N. Y.) 257; 24 Cyc. 909, 910.

The prayer of appellee's bill is that the will be construed, the rights of complainant "determined thereunder," the executors be required to give bond and to "file a complete inventory of the property received by them under the will." The demurrer challenging complainant's interest in any part of the testator's estate being overruled, the appeal was taken. Counsel for appellee expresses the belief that the court is not called upon to decide any question involving the distribution of the personal property, while appellant's counsel insists on a construction of the will as to all bequests and devises sought to be made by testator.

[14] We have no statute controlling conveyances of personal property in respect to the creation of perpetuities, except section 3410, limiting trusts for accumulation merely; and under the rule against perpetuities, a bequest of personal property is governed by common law. Lyons v. Bradley, 168 Ala. 505, 511, 522, 524, 53 South. 244; Pearce v. Pearce, supra; 22 Am. & Eng. Ency. p. 715.

Our holding as to the real property, under the several provisions of Mr. Crawford's will, is that: (1) The provisions made for the widow are valid; (2) there is intestacy as to the real property, and as to the balance of incomes and profits arising therefrom (after the provisions for the wife have been met); (3) the expressed intent to disinherit Dorothy Carlisle will not prevent her from taking, as a lineal descendant, the interest her ancestor would have taken, if living, in the real property and balance of income therefrom; (4) the bequest of personalty to the widow, the surviving children, and the grandchildren (except Dorothy Carlisle) is

valid and within the rule of the common law governing future estates of personalty in Alabama.

The series of classes of grandchildren who take the income indicated (subject to the widow's life estate) are well ascertained before the end of the year 1938, which is less than 21 years from the death of the testator. The bequests of the corpus of personal estate to grandchildren then living (except Dorothy Carlisle) vest in toto in grandchildren ascertained at the end of the year 1938, and at the end of a life in being (the widow's) at the time of testator's death. To sustain the bequest of personal property for the time, manner, and to the objects indicated is to give effect to testator's purpose and to effectuate it by the means the testator intended to use and under the rule of the common law.

The judgment of the circuit court is affirmed.

Affirmed.

SOMERVILLE, GARDNER, and MILLER, JJ., concur in opinion.

ANDERSON, C. J., and SAYRE, J., concur in conclusion.

McCLELLAN, J., dissents.

McCLELLAN, J. (dissenting in part). In my opinion the will of Mr. Crawford is entirely valid. I therefore dissent from the prevailing conclusion that the feature of the will relating to testator's real property is void because offensive to the rule against perpetuities; the affirmation being, in effect, that the testator undertook, illegally, to suspend the power of alienation of his real property for a period measured by time, rather than by lives in being as Code, § 3417, is declared to contemplate. If it is assumed, as does the majority of the court, that the presently material Alabama and New York statutes treating perpetuities are substantially the same the declaration to be quoted from the New York court in Moore v. Moore, 47 Barb. (N. Y.) 257, 260, cited approvingly in Lyons v. Bradley, 168 Ala. 517, 53 South. 244, serves to disclose that error affects the prevailing conclusion when Mr. Crawford's will is properly interpreted, in accordance with generally accepted rules of construction. In Moore v. Moore, supra, this was the pronouncement:

"In all the adjudicated cases upon this statute, the courts have uniformly held that the period of suspension of alienation could not be measured by time alone; that life must in some form be the measure of the period of suspension. Hawley v. James, 16 Wend. 123–172, 7 Paige, 25; s. c., 20 Wend. 464, 5 Sandf. 174, 3 Seld. 547, 3 Denio, 53."

When Mr. Crawford's will is soundly construed, to effect his intent—an interpretation that takes into consideration an important rule of testamentary construction

that has not been accorded deserved or due operation in this instance—it will be seen that this testator did not measure "by time alone" the period of suspension of the power of alienation of his real estate; to the contrary, that he designed a scheme whereby the period of suspension was measured by life or lives in being when the testator died, thus casting his will into the category that, under the authority of Moore v. Moore, supra, does not fall within the condemnation of the New York statutes nor of section 3417 of the Alabama Code, providing, as presently material, as follows:

"Lands may be conveyed to the wife and children, or children only, severally, successively, and jointly; * * * but conveyances to other than the wife and children, or children only, cannot extend beyond three lives in being at the date of the conveyance, and ten years thereafter."

The testator chose an executorial trust to carry into effect his intent. Other than the statute quoted (section 3417), there is no statute in this state setting limit to the duration of an active trust like this, the trust created not being a trust for accumulation within the purview of Code, § 3410.

Upon his death this testator was survived by his widow, four children, and, as averred in the bill, more than four grandchildren. His manifest desire was to make the widow, the children, and grandchildren (other than Dorothy Carlisle) beneficiaries of his estate in the manner and after the method to be stated. To effect this obvious purpose he sought to employ an executorial trust. His first consideration was to make provision for the means wherewith to maintain his widow during the remainder of her life; and to this end he fixed a charge therefor upon his estate and the active duty thereunto upon his executors to so administer and devote, in their discretion, the income or corpus of his estate. Consistent with this purpose, along with others to be stated, he directed that his executors or their successors should keep his estate together and to administer and manage it according to the scheme he designed. The feature of the will making provision for the widow is not questionable and is not questioned. Anticipating that his estate would produce a fund in excess of that necessary to the maintenance of his widow, he directed that to the survivor or survivors of his four named children should be annually distributed until 1928 the net, ascertained income and profits from his estate, and that from 1928 to 1938 the annual, ascertained net income and profits should be annually distributed per capita to his "grandchildren (except Dorothy Carlisle) then in being," the corpus of the estate to be distributed at the end of the period stated among his "said surviving children and my [his] grandchildren," except Dorothy Carlisle.

The feature of the trust preferring the surviving of the testator's four named children as the beneficiaries of the income (after provision for the widow) until 1928 is itself indubitably valid. Code, § 3417. One reason, among others, for this conclusion is that, notwithstanding the trust duration in this particular is expressed in time (1928), the prescription of time is obviously subordinate to the survival, pending the period to 1928, of one or more of the four named beneficiaries of the trust, viz. his four named children, the testator's paramount intent being to favor in that feature his named children, not to define, paramountly, the period that phase of the trust should endure. An efficiently declared trust fails, is not void or illegal, when pending its enjoyment, its designated beneficiaries cease to exist. Abercrombie's Ex'r v. Abercrombie's Heirs, 27 Ala. 489, 496, 497; 1 Jarman on Wills (6th Ed.) 527 et seq.; Trustees, etc., v. Caldwell, 203 Ala. 590, 84 South. 848, 851, 852.

The presence of invalidating circumstances is to be found, if at all, in this will in the feature of the trust whereby the testator provided for annual equal distribution of income (only) among his "grandchildren then in being" during the period 1928-1938, the stipulation for retention of executorial control and administration over that period, and the direction to divide in 1938 the corpus of his estate among (to quote item 6 of the will) "my said surviving children and my grandchildren," Dorothy Carlisle excepted.. The question of validity vel non, in the aspect touching the testator's real property, is dependent upon construction—a factor that does not seem to the writer to have had appropriate consideration in the attainment of the majority's conclusion to invalidity,

"When a will is fairly susceptible of two constructions, one of which would render it inoperative and the other give effect to it, the duty of the court is to adopt the latter construction." Castleberry v. Stringer, 176 Ala. 255, 57 South. 850.

The application of this sound doctrine to the case of asserted violation of the rule against perpetuities is strikingly illustrated in Nicoll v. Irby, 83 Conn. 530, 533, 534, 77 Atl. 957, where the court preferred and gave effect to a construction of the instrument that avoided a pronouncement of its invalidity as a violation of the rule against perpetuities. Mr. Crawford's will, in the particular under review, is a fair object for the operation of the conservative rule whereby testamentary disposition may be soundly preserved, not defeated, consistent with the presumption that a testator intends the terms of his direction to express an intent to effect a lawful purpose in a legal way.

Aside from the stated stipulation that his estate should be kept together until 1938, and the income annually distributed as his scheme contemplated, the basis for the view that a violation of the rule against perpetuities is provided is held to result from the words "my grandchildren then in being," employed to describe those entitled to the contemplated distribution of the corpus in 1938. To that end, the will is read as defining a class, ascertainable only in 1938, that, through the birth of grandchildren prior to 1938, after the testator's death, may be composed of persons entirely different from those in being at the testator's death in 1918 or from those who were or will be grandchildren in 1928 when the annuity for "grandchildren" would come to be enjoyed. This testator did not expressly provide for after-born grandchildren. He left the expression of his intent as to the division of the corpus to the reference to those in being in 1938. Those "grandchildren then (1938) in being" may be those in being when the testator died. At the time he died he had, as stated, a number of grandchildren. The quoted phrase is not conclusive; it is subject to construction; it is fairly, reasonably open to an interpretation that accords the phrase the meaning of survivorship in 1938 among his grandchildren in being when he died. There is no term in the will this construction would contradict or modify. The provision for keeping the estate together, under an executorial trust, until 1938 is not at all inconsistent with the arrival of 1938 as the point of time at which the corpus of his estate would be distributable to such of his grandchildren, in being when he died, as survive the period intervening the distribution directed for the year 1938. To construe the will, particularly the quoted phrase, as but defining a class subject to altered personnel between the testator's death and 1938, through birth of grandchildren subsequent in that period, manifests a construction against, rather than in favor of, validity of the trust; this without proper regard for the office or effect of the rule of construction approved in Castleberry v. Stringer, supra, and Nicoll v. Irby, supra. Furthermore, to construe this feature of the will to invalidity, because violative of the rule against perpetuities requires the unwarranted exaltation of the provision with respect to time (1938) over the obviously paramount intent of the testator to bestow his bounty, annuity (income), and then the principal, in part, upon children of the testator's children, thus overemphasizing the minor above the major testamentary purpose, to the end of inviting a conclusion against validity. If, as the will should be interpreted, the testator designated, not a class the alterable personnel of which should be ascertained in 1938, but those of his grandchildren living when he died in 1918, and who survived to the time of distribution in 1938, the will is entirely valid, and represents no effort to offend the rule against

perpetuities. In other words, the testator's design provided the same scheme with respect to the beneficiaries among his grandchildren as he did for his four named, surviving children. Under this proper construction, the provision as to time of duration and for distribution of the corpus would depend upon the survival, to the time of distribution (1938), of some or all of the grandchildren in being when the testator died. If all of such grandchildren should die before distribution of the corpus (1938), the death of the last of such grandchildren as were living when the testator died would simply terminate the trust for want of a beneficiary or beneficiaries (authorities, supra), a condition not at all predicable of illegality.

This construction of the will affects to bring it within the influence of the quoted rule of Moore v. Moore, supra, where it was held that, if life in some form rather than "time alone," determined the period of suspension of the power of alienation, the statute against perpetuities is not offended.

I therefore dissent from the conclusion of the majority in the particular that a feature of this will is void.